UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: LAS CRUCES COUNTRY CLUB, INC.,      No. 16-12947-j7
A New Mexico Non-Profit Corporation,

Debtor.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Chapter 7 Trustee's Motion to Approve Sale of all Assets of the Bankruptcy Estate Free and Clear of Liens, Claims, or Interests and for Approval of Settlement of Adversary No. 17-1084-J ("Motion to Sell"). *See* Docket No. 69.[1] The Motion to Sell requests the Court to approve the sale of all of the bankruptcy estate's assets, including a promissory note, a mortgage, and fraudulent transfer claims asserted by the Chapter 7 Trustee in Adversary Proceeding Number 17-1084-j (the "Adversary Proceeding") to Cruces Equity Partners ("CEP") and/or Park Ridge Properties, LLLP ("Park Ridge") for $3.3 Million.[2] The sale, if approved and consummated, would also settle all of the issues in the Adversary Proceeding.

The Court held a preliminary hearing on the Motion to Sell on March 19, 2018 and took the matter under advisement. Daniel A. White appeared on behalf of Philip J. Montoya, Chapter 7 Trustee ("Trustee"). R. Trey Arvizu, III appeared on behalf of the Debtor, Las Cruces Country Club, Inc. ("LCCC" or "Debtor")). Joseph Cervantes appeared on behalf of Sonoma Ranch

---

[1] The Chapter 7 Trustee filed the same motion as a motion to approve compromise under Federal Rule of Bankruptcy Procedure 9019. *See* Docket No. 70.

[2] The Chapter 7 Trustee filed two addenda to the Motion to Sell. *See* Addendum to Chapter 7 Trustee's Motion to Approve Sale of All Assets of the Estate Free and Clear of Liens, Claims or Interests and for Approval of Settlement of Adversary No. 17-1084-j ("First Addendum") – Docket No. 72; Addendum to Chapter 7 Trustee's Motion to Approve Sale of All Assets of the Estate Free and Clear of Liens, Claims or Interests and for Approval of Settlement of Adversary No. 17-1084-j ("Second Addendum") – Docket No. 76. The Motion to Sell as used in this Memorandum Opinion includes the First Addendum and the Second Addendum.

Golf, LLC and Sonoma Ranch Subdivision Ltd. Co. (together, the "Sonoma Entities"). James Michael Feuille appeared on behalf of First Valley Realty, Inc. ("First Valley"). Robert R. Feuille appeared on behalf of First Valley, CEP, and Park Ridge. David P. Lutz appeared on behalf of Prestige Development Group Incorporated ("Prestige"). Alice Nystel Page appeared on behalf of the United States Trustee. Representatives of the Country Club Neighborhood Association also attended the hearing by telephone and were allowed to comment on the Motion to Sell.

For the reasons explained below, the Court will deny the Motion to Sell and direct that the bankruptcy estate assets be sold by auction.

## BACKGROUND AND PROCEDURAL HISTORY

LCCC, a nonprofit corporation, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 29, 2016. *See* Docket No. 1. Philip J. Montoya was appointed Chapter 7 Trustee. *See* Docket No. 3.

The Debtor's schedules list an asset described as "amount due on sale of real estate" in the amount of $4,878,125.00, which is 99.97% by amount of the scheduled assets. *See* Schedules – Docket No. 9. The Trustee filed the Adversary Proceeding on October 30, 2017, alleging that LCCC conveyed certain real estate to Park Ridge in exchange for a Limited Recourse Promissory Note (the "Note") in the amount of $4,878,125.00 secured by a mortgage (the "Mortgage"). *See* Adversary No. 17-1084, Complaint to Avoid Fraudulent Transfers ("Complaint"), ¶¶ 6-8. The Trustee alleges that Park Ridge's obligations under the Note and

Mortgage are "akin to a permanent option given for no consideration" and seeks to recover the conveyed property for the bankruptcy estate under a fraudulent transfer theory. *See* Complaint.[3]

After the Trustee filed a Trustee's Report of Assets, the Court fixed May 5, 2017 as the deadline for creditors to file proofs of claim. *See* Notice of Deadline to File Proof of Claim – Docket No. 17. The claims register reflects eleven proofs of claim have been filed, which together total $1,266,708.96, consisting of secured claims in the amount of $54,697.68, priority unsecured claims in the amount of $63,872.50, and non-priority unsecured claims in the amount of $1,148,138.78.[4] The Sonoma Entities filed a proof of claim in the amount of $855,080.63 based on "breach of real estate contract and settlement agreement." *See* Claims Register, Claim No. 7-1. The Sonoma Entities' claim is the largest claim against the estate. First Valley filed the second largest claim, in the amount of $191,943.23. *See* Claims Register, Claim No. 1-2. New Mexico Taxation & Revenue Department filed the third largest claim in the amount of $67,805.16. *See* Claims Register, Claim No. 3-2.

Following status conferences in the Adversary Proceeding held on January 11, 2018, January 17, 2018, and February 8, 2018, the Court entered a Mediation Order directing the Chapter 7 Trustee, Park Ridge, and LC Medical to attend a mediation in an effort to settle the Adversary Proceeding. *See* Mediation Order, Adversary Proceeding – Docket No. 17. The Mediation Order empowered the mediator "to control all procedural aspects of the Mediation." *Id.* at ¶ 2.c. The Mediation Order also contained confidentiality provisions requiring that statements made during the mediation "not be divulged by any of the participants in the

---

[3] The Trustee also named LC Medical Properties, LLP ("LC Medical") as a defendant in the Adversary Proceeding and seeks to avoid an Agreement Imposing Covenants and Restrictions Affecting Land allegedly made for the benefit of LC Medical.

[4] The Debtor's schedules reflect total pre-petition undisputed and disputed debt in the amount of $512,221.45, plus disputed claims of Sonoma Ranch Partners, Sonoma Ranch Golf LLC and Sonoma Ranch Subdivision Ltd., Co. in unknown amounts. *See* Schedules – Docket No. 9.

-3-

Mediation (or their agents) or by the Mediator to the Court or to any third party," and protecting the mediator from being compelled "to testify in regard to the Mediation in connection with any arbitral, judicial or other proceeding, including any hearing held by this Court." *Id.* at ¶ 5.

Meanwhile, in LCCC's bankruptcy case, First Valley filed a motion to convert LCCC's Chapter 7 case to Chapter 11, and sought to appoint Randy McMillan, a principal of First Valley and CEP, as Chapter 11 Trustee. *See* First Valley Realty, Inc.'s Expedited Motion to Convert Case to Chapter 11 and to Appoint Chapter 11 Trustee ("Motion to Convert") – Docket No. 59. At a hearing on the Motion to Convert, held February 21, 2018, counsel for the Trustee represented to the Court that the Trustee had received a letter of intent from Prestige to purchase the Note and Mortgage for $2.1 Million. The United States Trustee recommended that the Trustee pursue the offer, pointing out that the Trustee's duty is to maximize payment to the bankruptcy estate. The Trustee's counsel represented to the Court that he felt Prestige's offer was real, and that a sale to Prestige for $2.1 Million would pay all creditors in full and could moot the mediation of the Adversary Proceeding. The Trustee's counsel also urged the Court to include Prestige in the mediation. The Court pointed out that Prestige is not a party to the Adversary Proceeding; therefore, Prestige could not be a participant in the mediation, but could be a source of information for the mediator if it voluntarily chose to attend the mediation.

Following the February 21, 2018 hearing, the Court entered two orders: 1) an Order Resulting from Preliminary Hearing (Docket No. 65); and 2) an Order Regarding Mediation. *See* Adversary Proceeding – Docket No. 18. The Order Resulting from Preliminary Hearing provided, in part, as follows: 1) the Court would hold a preliminary hearing on a motion to sell on March 19, 2018 if the Trustee filed a motion to sell by March 13, 2018; 2) the mediation of the Adversary Proceeding would proceed as scheduled in accordance with the Mediation Order;

and 3) any pre-mediation agreement to sell assets must give the Trustee the right, in his sole discretion, to terminate the agreement within two business days after the conclusion of the mediation *See* Docket No. 65, ¶¶ 1, 3, and 4.

The Order Regarding Mediation noted that "it might facilitate settlement of this adversary proceeding if representatives of CEP and Prestige (together, the "Representatives") make themselves available during the mediation in the event the Mediator wishes to consult with them." Order Regarding Mediation, pp. 1 – 2. The Order Regarding Mediation ordered the following:

> The Mediator is directed to consider prior to the commencement of the Mediation whether he believes it might be helpful for Representatives to be available during the Mediation (in person or by telephone) for consultation with the Mediator. The Mediator in his discretion may consult with counsel for the parties to the Mediation before making the decision. In the Mediator's sole discretion, he may invite Representatives of both CEP and Prestige to be available during the Mediation for consultation with the Mediator. If so invited, it is entirely up to the Representatives whether they wish to make themselves available to the Mediator during the Mediation.

Order Regarding Mediation, ¶ 1.

> The Mediator is authorized, in furtherance of mediation of the Disputes, to discuss with the Representatives during the Mediation who make themselves available to the Mediator for consultation, the offers made or that they might be willing to make to purchase the Assets and to explore with the Mediation parties matters relating to the offers or potential offers and the sale of the Assets.

Order Regarding Mediation, ¶ 2.

The mediator conducted the mediation on March 7, 2018. On March 13, 2018, following the mediation, instead of filing a motion requesting authority to conduct a public auction, the Trustee filed the Motion to Sell requesting Court approval of the sale of all of the bankruptcy estate assets to CEP and/or Park Ridge for $3.3 Million. *See* Docket No. 69.[5] Filing the Motion

---

[5] The Motion to Sell seeks to sell the following assets: 1) a promissory note between Park Ridge as borrower and LCCC as lender dated October 27, 2014; 2) a mortgage dated `October 27, 2014 between

-5-

to Sell by the deadline fixed in the Court's prior order triggered the March 19, 2018 preliminary hearing date. However, instead of following the procedure set forth in NM LBR 9013-1(g),[6] the Trustee elected to send a 21-day notice of objection deadline pursuant to NM LBR 9013-1(d). That resulted in the anomalous circumstance in which the deadline to object to the Motion to Sell did not expire until after the preliminary hearing.

The Motion to Sell recites that the Trustee, Park Ridge, CEP, and Prestige attended the mediation, and that, "[a]fter several rounds of negotiation from Buyer and from Prestige, Buyer presented the Trustee with the highest and best offer to purchase the Note and Mortgage." *Id.* at ¶ 5. The purchase price is sufficient to pay all claims in full with a substantial surplus to the bankruptcy estate.[7] Counsel for LCCC has represented to the Court that LCCC's board of directors has voted to donate any surplus after payment of all claims against the bankruptcy estate to New Mexico State University ("NMSU").

The Trustee filed two addenda to the Motion to Sell on March 14, 2018 and March 20, 2018. The first addendum attached proof of the wire receipt of the purchase price. *See* Addendum to Chapter 7 Trustee's Motion to Approve Sale of All Assets of the Estate Free and Clear of Liens, Claims, or Interests and for Approval of Settlement of Adversary No. 17-1084-J – Docket No. 72. The second addendum 1) confirms that the purchaser escrowed the purchase

---

Park Ridge as mortgagor and LCCC as mortgagee; and 3) fraudulent transfer claims asserted by the Chapter 7 Trustee against Park Ridge and LC Medical in Adversary Proceeding No. 17-1084-j.
[6] NM LBR 9013-1(g) provides:
>   Alternative Procedure. As an alternative to the procedures outlined above, the movant may obtain a preliminary hearing date and time on an opposed motion by contacting the courtroom deputy for the assigned judge, and serve notice of the motion and hearing. Under this alternative, no objection deadline is set; a party in interest may either file an objection before the hearing or appear at the hearing and object. With court permission, the movant may also obtain from the courtroom deputy a final hearing date and time, and serve notice of both hearings as directed by the court.

[7] The total amount of all pre-petition claims filed against the bankruptcy estate is $1,266,708.96. *See* Claims Register.

price; 2) deletes the provision in the purchase agreement that authorizes the purchaser to receive a credit towards the purchase price based on the claims of First Valley and the Sonoma Entities; and 3) provides for the Trustee to withdraw the objection to First Valley's claim and to pay all timely-filed unsecured claims in full at closing from the proceeds of the sale of estate assets. *See* Addendum to Chapter 7 Trustee's Motion to Approve Sale of All Assets of the Estate Free and Clear of Liens, Claims, or Interests, and for Approval of Settlement of Adversary No. 17-1084-J – Docket No. 76.

Prestige filed an objection to the Motion to Sell on March 16, 2018, asserting that it is willing to pay "at least $3.5 million" to purchase all of the assets of the bankruptcy estate, and that it is in the best interest of LCCC's estate and its creditors to accept the highest offer for the sale. *See* Prestige Development Group Incorporated's Objection to Chapter 7 Trustee's Motion to Approve Sale of All Assets of the Estate Free and Clear of Liens, Claims or Interests ("Prestige's Objection") – Docket No. 74.

The deadline to object to the Motion to Sell expired March 27, 2018, after the Court held the preliminary hearing on the Motion to Sell on March 19, 2018 and took the matter under advisement. After the preliminary hearing but before the time to object to the Motion for Approval of Sale expired, LCCC filed a limited objection, asserting that an auction of the assets of the bankruptcy estate would be beneficial to LCCC because it would maximize the surplus in the estate. *See* Limited Objection to Motion to Sell ("LCCC's Objection") – Docket No. 77. CEP, Park Ridge and First Valley filed a response to Prestige's Objection. Docket No. 79. Sonoma Entities and James William Rives filed responses to the Motion to Sell in support of the motion. *See* Docket Nos. 81 and 83. The Trustee filed a reply on March 27, 2018. *See* Docket No. 84. On March 29, 2018 CEP, Park Ridge, and First Valley filed a response to the Trustee's

reply, and filed an amended response on April 2, 2018. *See* Docket Nos. 86 and 89. Finally, Prestige filed a reply in support of the objection to the Motion to Sell on April 2, 2018. *See* Docket No. 90.

DISCUSSION

A. Standing[8]

As a threshold matter, the Court will consider which parties have standing to object or otherwise respond to the Motion to Sell. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2202, 2205, 45 L.3d 2d 343 (1975)).

*Whether Prestige has standing to object to the Motion to Sell*

Prestige is not a creditor or equity interest holder in LCCC's bankruptcy case. Its only interest in the Motion to Sell is as a potential purchaser. Prestige's sole objection to the Motion to Sell is that it will pay at least $3.5 million for the assets and it is in the best interest of the estate to accept the highest offer. *See* Prestige's Objection – Docket No. 74. Prestige does not have standing to object to the Motion to Sell on this ground. Generally, an entity that is a stranger to the bankruptcy case except for its interest in purchasing an estate asset lacks standing to object to a motion to sell. *Cf. In re Diplomat Construction, Inc.*, 481 B.R. 215, 217 (Bankr. N.D. Ga. 2012) (unsuccessful competing bidders were not parties in interest with respect to the trustee's motion to sell and, therefore, lacked standing to oppose the trustee's motion) (citing *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 739, 742 (Bankr. N.D. Ala. 2002) (remaining citations omitted)); *cf. In re Protech Coating Services, Inc.,* 479 B.R. 611, 613-14 (Bankr. M.D.

---

[8] The Court permitted a representative of the Country Club Neighborhood Association who attended the preliminary hearing on the Motion to Sell by telephone to comment on the Motion to Sell as a friend of the Court. The Court does not intend to permit the Country Club Neighborhood Association to comment further on a proposed sale of bankruptcy estate assets unless it can demonstrate that it has standing.

Fla. 2012) ("[N]on-creditors ordinarily do not have standing to object to a compromise.") (citation omitted). While an unsuccessful bidder may have standing to object to a sale on the ground there was an irregularity in how the auction was conducted, *see In re Family Christian, LLC*, 533 B.R. 600, 620-21 (Bankr. W.D. Mich. 2015), Prestige did not object on this ground. Further, as discussed below, the mediation did not effectuate a court-approved auction. Consequently, Prestige is not an "unsuccessful bidder." Nevertheless, the Court can take into account Prestige's willingness to pay more in considering objections by parties in interest who do have standing.

*Whether LCCC has standing to object to the Motion to Sell*

A chapter 7 corporate debtor has standing to object to a motion to sell only upon a showing of a reasonable possibility of a surplus estate.[9] *In re 60 East 80th Street Equities, Inc.,* 218 F.3d 109, 116 (2d Cir. 2000); *see also, In re Brutsche,* 500 B.R. 62, 72 (Bankr. D.N.M. 2013) ("To have standing, a debtor must have a financial interest in the outcome of the proposed settlement agreement . . . To demonstrate this, the debtor must show a reasonable possibility of surplus after satisfying all debts.") (citations omitted); *In re Symka, Inc.*, 518 B.R. 888, 890 (Bankr. D. Colo. 2014) (explaining that "'[i]t is a long-standing principle of bankruptcy administration that where all claims of creditors will not be paid and there will be no surplus to the debtor, there is no standing to object to the administration for lack of any pecuniary interest in the liquidation of assets and distributions to creditors.'") (quoting *In re Creditors Service Corp.,* 206 B.R. 174, 176 (Bankr. S.D. Ohio 1997)). The proposed purchaser has deposited the $3.3 Million purchase price, which is significantly higher than the total amount of all claims filed against the bankruptcy estate. LCCC, therefore, has standing to object to the Motion to Sell on

---

[9] An individual chapter 7 debtor may have standing to object to a sale for other reasons, for example if a sale at a higher price would reduce the debtor's non-dischargeable liability on a debt.

the ground that the sale does not maximize value for the bankruptcy estate. LCCC has standing notwithstanding its status as a non-profit corporation that intends to contribute any surplus it receives to NMSU. The greater the surplus, the bigger the donation LCCC can make to its intended beneficiary.

*Whether other creditors have standing to object to the Motion to Sell*

The Sonoma Entities hold the largest unsecured claim against the bankruptcy estate. However, because the proposed sale will pay the Sonoma Entities claim in full, the Sonoma Entities ordinarily would lack standing to object to the Motion to Sell.[10] However, here, the Sonoma Entities did not object to the sale but, instead, filed a response in support of the sale. The Sonoma Entities support the existing sale rather than a sale at a public auction because of the perceived risk in not achieving a sale price at a public auction that is enough to pay them in full. The Sonoma Entities have a direct pecuniary interest as creditors of the estate relative to voicing this opinion in support of the Motion to Sell and for that reason have standing.

James William Rives also filed a response to the Motion to Sell to express his support for the sale. *See* Docket No. 83. Mr. Rives is concerned about further delay and the risk that the purchaser may decide to walk away and not to bid if the Court orders a public auction. *Id.* Just like the Sonoma Entities, Mr. Rives has standing as a creditor to voice this opinion in support of the sale instead of a public auction.

B. <u>Public Auction vs. Approval of Existing Sale</u>

CEP, Park Ridge and First Valley urge the Court to approve the sale to CEP who bid in good faith at the mediation ordered by the Court and is the successful bidder. More specifically, they contend that 1) the successful mediation of the Adversary Proceeding effectuated an auction

---

[10] A creditor whose claim would be paid in full by a sale might still have standing to object, for example, if the objection relates to the risk that the sale to the buyer will not close.

-10-

of the bankruptcy estate's assets; 2) the mediator took eight bids (four from each of Prestige and CEP) with an opening bid of $2.1 million; and 3) CEP was the successful bidder at the auction in the amount of $3.3 Million after Prestige stopped bidding and left the auction. CEP, Park Ridge, and First Valley assert that Prestige, as an unsuccessful bidder at the mediation auction, lacks standing to object to the Motion to Sell. They also point out that Prestige's new bid, after completion of the auction, is not significantly higher than the price Park Ridge and/or CEP has agreed to pay.

Neither the Mediation Order nor the Order Regarding Mediation directed the mediator to conduct an auction. A mediator conducted bidding process does not have the procedural safeguards of a public auction conducted in accordance with court approved auction procedures and bidding rules that preserve the integrity of the auction process, promote transparency, and are designed to maximize value for the bankruptcy estate.[11] *Cf. In re Farmland Industries, Inc.,* 284 B.R. 111, 120 (Bankr. W.D. Mo. 2002) (an auction and bid process established by court order ensures the regularity of the auction and encourages bidders to make their highest and best bids).

By contrast, the mediator's de facto auction of the estate's assets was not a transparent process subject to adequate judicial oversight. The confidentiality provisions of the Mediation

---

[11] For example, court approved auction procedures generally require that the auction be advertised to the public and that only qualified bidders may bid at the auction. To be a qualified bidder, bidders must agree to the auction procedures and bidding rules and generally must demonstrate their financial ability to close the sale if they are the successful bidder. Bidders can be required to make a good faith deposit prior to the auction that will be forfeited if the bid is accepted but the successful bidder fails to close. Bid procedures generally confirm a trustee's reasonable discretion to determine what the best bid is. A bid procedure may give the trustee the right to accept the second best bid within a certain time if the successful bidder fails to close. To ensure a minimum bid (and for other reasons), bid procedures may include a sales contract signed by a bidder that serves as the opening bid at the auction, with a breakup fee if the opening bidder is not the successful bidder. Alternatively, there may be a reserve price that is either disclosed or undisclosed to bidders. Bid rules govern such things as whether bids are irrevocable, bidding increments, and the time between bids.

-11-

Order preclude the parties from presenting evidence about the mediator's de facto auction of the estate's assets.  Further, without any required proof of the financial ability to close the sale if the bidder is the successful bidder, competing bidders may be dissuaded from bidding against a party they think may be unable to close the purchase.

"In order to achieve the goals of maximizing the value of the estate and protecting the interests of creditors, the court has plenary power to provide for competitive bidding." *In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir.1989) *quoted with approval in In re Broadmoor Place Investments, L.P.*, 994 F.2d 744, 746 (10th Cir. 1993).  At the March 19, 2018 hearing, the Trustee and Prestige made the Court aware of a competing offer in excess of the sales price in the Motion to Sell.  Knowledge of an existing competing offer is sufficient for the Court to require an auction. *See Broadmoor,* 994 F.2d at 746 (holding that "a Bankruptcy Court . . . does have the power to disapprove a proposed sale recommended by a trustee or debtor-in-possession if it has an awareness there is another proposal in hand which, from the estate's point of view is better or more acceptable.") (citing *In re Landscape Properties, Inc.*, 100 B.R. 445, 447 (Bankr. E.D. Ark. 1988)).

Under the circumstances of this case, to ensure the integrity of the sale process and to maximize value for the estate, the Court concludes that the best approach is to require the Trustee to sell all of the estate's assets at a public auction pursuant to auction procedures and bidding rules approved by the Court.  An auction conducted in accordance with approved procedures and bidding rules will promote fairness and transparency for the sale process and will give all interested bidders an equal opportunity to purchase the estate's assets. Notwithstanding the concerns of the Sonoma Entities and Mr. Rivas, the Court believes a public auction will optimize the prospect of maximizing the surplus to the estate.  A public auction conducted in

accordance with court-approved auction procedures and bidding rules to the bidder making the best bid will in this case result in a court-approved sale that will be very difficult for any party to revisit. *Cf. J.J. Sugarman Co. v. Davis*, 203 F.2d 931, 932 (10th Cir. 1953) ("[R]efusing to confirm a sale to a high bidder merely because an intervening higher bid has been received is the surest way to destroy confidence in judicial sales . . ."); *In re Gil-Bern Industries, Inc.*, 526 F.2d 627, 628 (1st Cir. 1975) ("[I]t is important that the bidder receive what he had reason to expect, and that nothing impair public confidence in the regularity of judicial sales."). The Court will, therefore, deny the Motion to Sell and direct the Trustee to file a motion to sell the assets by public auction and to seek approval of auction procedures and bidding rules that the Trustee, exercising his best judgement, believes are appropriate for the auction.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  April 2, 2018

COPY TO:

R. Trey Arvizu, III
Attorney for Debtor
PO Box 1479
Las Cruces, NM 88004

Philip J. Montoya
Chapter 7 Trustee
1122 Central Ave SW Ste #3
Albuquerque, NM 87102

Daniel Andrew White
Attorney for Chapter 7 Trustee
Askew & Mazel, LLC
1122 Central Ave. SW, Suite 1
Albuquerque, NM 87102

Joseph Cervantes
Attorney for Sonoma Entities
2610 S Espina
Las Cruces, NM 88001

James Michael Feuille
Attorney for First Valley, CEP, and Park Ridge
ScottHulse, PC
201 E. Main, Ste. 1100
El Paso, TX 79901

Robert R Feuille
Attorney for First Valley, CEP, and Park Ridge
PO Box 99123
El Paso, TX 79999-9123

David P Lutz
Attorney for Prestige Development
PO Drawer 1837
Las Cruces, NM 88004-1837

James William Rives
PO Box 1074
Dona Ana, NM 88032