UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

LAS CRUCES COUNTRY CLUB, INC.                    Case No. 16-12947-j7
a New Mexico Non-Profit Corporation              Chapter 7

　　　　Debtor.

## CHAPTER 7 TRUSTEE'S SECOND MOTION TO APPROVE SALE OF ALL ASSETS OF THE BANKRUPTCY ESTATE FREE AND CLEAR OF LIENS, CLAIMS, OR INTERESTS

Philip J. Montoya, the Chapter 7 Trustee of the above-captioned estate ("**Trustee**"), pursuant to Bankruptcy Code §§ 363(f) and 365 and other applicable law, if any, moves the Court to approve the sale of all of the estate's assets, specifically including, but not limited to that certain *Limited Recourse Promissory Note* dated October 27, 2014 between Park Ridge Properties, LLLP, a New Mexico limited liability partnership ("**Park Ridge**") as Borrower, and the Debtor as Lender (the "**Note**"), a Mortgage dated effective October 27, 2014 between Park Ridge as mortgagor and the Debtor as mortgagee, recorded in records of the clerk of Dona Ana County, as Instrument No. 1422271 (the "**Mortgage**"), and any fraudulent transfer claims owned by the estate, to Cruces Equity Partners, LLLP ("**CEP**") on the terms set forth below, and in support hereof, states:

1.　　　Background.　On November 29, 2016 (the "**Petition Date**"), Las Cruces Country Club, Inc., a New Mexico non-profit corporation (the "**Debtor**") commenced the above-captioned case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Philip J. Montoya was appointed Chapter 7 Trustee in this case, and continues to serve in that capacity.

2.　　　Jurisdiction and Venue.　The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.　This matter is a core proceeding under 28 U.S.C. § 157(b)(2).　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. <u>The Note.</u>  As disclosed on Debtor's Schedule B, the estate owns an interest in a *Limited Recourse Promissory Note*, dated October 27, 2014, granted to the Debtor by Park Ridge Properties, LLLP, a New Mexico limited liability partnership ("**Park Ridge**"), as borrower, in the principal amount of $4,878,125.00,  (the "**Note**"). The Note is secured by a *Mortgage* of even date, recorded in the books and records of Dona Ana County, New Mexico, as Instrument # 1422271 (the "**Mortgage**") and encumbers 76.11 acres of real property, consisting of the majority of the former site of Las Cruces Country Club, in Las Cruces, New Mexico (the "**Property**"). True and correct copies of the Note and Mortgage are attached hereto as <u>Exhibit A</u>.

4. <u>The Fraudulent Transfer Proceeding.</u> On October 10, 2017, the Trustee filed a *Complaint to Avoid Fraudulent Transfers*, initiating Case No. 17-1084 (the "**Fraudulent Transfer Action**"), alleging, *inter alia*, that because the Note does not require payments, or provide for interest, until planned unit development approval from the City of Las Cruces ("**PUD Approval**") the Note and Mortgage did not constitute reasonably equivalent value for the transfer of the Property to Park Ridge, and that the transfer should therefore be avoided. Park Ridge disputed the allegations and has asserted that under the implied covenant of good faith and fair dealing, a requirement to obtain PUD Approval should be read into the Note, that the time to obtain PUD Approval has not expired, and that the Note is therefore not in default. On May 25, 2018, following oral argument, this Court entered an Order finding that the Note had a maturity date of October 27, 2019 and dismissing the Fraudulent Transfer Action (Doc. No. 25 in Case No. 17-1084).

5. <u>Proposed Sale.</u>  By this Motion, the Trustee seeks the Court's approval to sell all of the estate's assets, including, without limitation, the Note, the Mortgage, any fraudulent transfer claims of the estate, and all other assets of the estate (collectively, the "**Assets**") to CEP for $2,200,000.00 (the "**Purchase Price**"). In consideration of the Purchase Price, the Trustee would endorse the Note to CEP, without recourse, and transfer all collateral documents securing the Note,

all guaranties securing payment of the Note, and transfer all other assets of the estate to CEP. In addition, the Trustee will withdraw his existing objection to First Valley Realty, Inc.'s claim against the bankruptcy estate (the "**FVR Claim**") and Sonoma Ranch Golf Course, LLC and Sonoma Ranch Subdivision Ltd. Co.'s claim against the bankruptcy estate (the "**Sonoma Claim**"), and file no further objection to the FVR Claim or the Sonoma Claim. The proposed sale and purchase contemplated by the parties will close 45 days following Court approval.  As set forth therein, if the offer is accepted, but (a) the Trustee withdraws from the agreement (b) a higher or better offer is either accepted or promoted by the Trustee, or (c) the Trustee requests an auction, the estate will be liable to CEP for a $200,000.00 break-up fee, which shall constitute a lien attaching to the Note and its proceeds. The FVR Claim shall be paid in full at closing of the sale, and the money paid on such claim shall be applied to pay the Purchase Price. A true and correct copy of the purchase agreement attached hereto as <u>Exhibit B</u>.

6.     <u>Sale Free and Clear of Liens.</u>     Upon information and belief, there are no known liens, claims, or interests attaching to or encumbering the Estate's interest in the Note or Mortgage, other than *a Collateral Assignment of Promissory Note and Lien* in favor of First Valley Realty, Inc., executed on October 27, 2014, prior to the Petition Date, but not recorded until December 9, 2016, after the Petition Date (the "**Assignment**"). The lien of the Assignment would attach to the proceeds of the sale with the same extent and validity it attached to the Note, up to the amount alleged in the FVR Claim at the time of this writing, $191,943.23. The Trustee is not aware of any additional liens, claims or encumbrances on assets of the estate. To the extent there are additional liens, claims or interest on the Estate's interest in the Note or Mortgage, the Trustee requests permission to sell the Assets, pursuant to 11 U.S.C. § 363(f), free and clear of liens, claims, and interests, and that all such liens, claims and interests attach to the proceeds of the sale with the same validity and priority, and to the same extent, that they attach to the assets sold.  Additionally,

the Trustee seeks an order declaring Buyer to have acted in good faith, as that term is used in 11 U.S.C. § 363(m), and that Buyer shall be considered a good faith buyer of the Assets, pursuant to 11 U.S.C. § 363(m).

7.      The Proposed Sale is fair and equitable, and is in the best interests of and beneficial to the Debtor's estate and the creditors.  The Trustee has analyzed the value of the Assets and believes the proposed sale to be fair and in the best interest of the estate. Due to the unusual nature of the Note, and the lack of ay recourse on the Note and Mortgage other than the Property, the depressed nature of the commercial real estate market, and the fact that the Note does not mature until October 2019, with no payments due until that time, the Trustee believes that it is unlikely that any party other than the Buyer, would be willing to purchase the Assets. The Trustee has solicited interest from multiple distressed debt investors, and no party was willing to offer more than the purchase price. The Purchase Price represents the highest and best price the Trustee has obtained for the Assets, is supported by escrowed funds, is in excess of the total claims reflected in the Claims Register, and will result in a surplus in the estate. The sale liquidates the estate and provides immediate funds to the estate for a fair price, which is important to the estate's creditors, and eliminates any delay in litigating a default on the Note and any uncertainty about the value of the collateral securing payment of the Note. Given these factors, the Trustee believes the other terms of the sale are fair and equitable under the circumstances.

WHEREFORE, the Trustee requests that the Court enter an order (i) approving sale of the Estate's interest in Assets free and clear of liens, claims, or interests, as set forth above, (ii) determining Buyer to be a good faith purchaser under 11 U.S.C. § 363(m), (iii) and (iv) for all other just and proper relief.

Respectfully submitted,

ASKEW & MAZEL, LLC

By: */s/filed electronically*
    Daniel A. White
    1122 Central Ave. SW, Suite 1
    Albuquerque, New Mexico 87102
    (505) 433.3097 (phone)
    (505) 717.1494 (fax)
    dwhite@askewmazelfirm.com
    *Attorneys for the Chapter 7 Trustee*

This certifies that on July 18, 2018 a copy of the foregoing pleading was served by the Bankruptcy Court's electronic filing system on all parties who have entered an appearance in this case.

*s/ filed electronically*
Daniel A. White

**Exhibit "A"**

**LIMITED RECOURSE PROMISSORY NOTE**
(the "Note")

$4,878,125.00                  ~~October 27~~                  Las Cruces, New Mexico
                                                             , 2014 (the "Effective Date")

     **1.**    **Amount, Obligation to Pay, Interest Rate.** FOR VALUE RECEIVED, in such installments and at the times hereinafter stated, the undersigned, Park Ridge Properties, LLLP, a New Mexico limited liability limited partnership ("Borrower"), whose mailing address is 1340 Picacho Hills Drive, Suite 100, Las Cruces, New Mexico 88007, hereby unconditionally promises to pay to the order of Las Cruces Country Club, Inc., a New Mexico not-for-profit corporation (together with any and all of its successors and assigns and/or any other holder of this Note, "Lender"), whose address is P.O. Box 876, Las Cruces, New Mexico 88004, without offset, in immediately available funds constituting legal tender of the United States of America, an amount equal to Four Million Eight Hundred Seventy Eight Thousand One Hundred Twenty Five and No/100ths Dollars ($4,878,125.00) with interest on the unpaid principal balance from time to time outstanding. Interest under this Note shall accrue from the date of each disbursement made hereunder as follows:

     From the Effective Date until the date of the PUD Approval, as referenced in Paragraph 18, below, the Note shall be non-interest bearing. From and after the date of the PUD Approval, and prior to default, the rate of interest hereunder shall be six percent (6.00%) per annum (the "Interest Rate"). The Interest Rate shall not exceed the Maximum Rate, as defined hereinafter. Interest shall be computed on the basis of a 360 day year for the actual number of days elapsed, unless that calculation would result in an effective rate exceeding the maximum rate allowed by applicable law, in which case interest will be computed on the basis of a 365 or 366 day year, as the case may be.

     **2.**    **Terms.** Payments of principal and interest under this Note shall be made as follows:

     The first payment due hereunder, in the amount of One Million and No/100ths Dollars ($1,000,000.00), to be applied against the principal balance of the Note, plus accrued interest, shall be due and payable thirty (30) days from the date of PUD Approval (the "First Payment Date"). Thereafter, annual principal payments of One Million and No/100ths Dollars ($1,000,000.00) each, plus accrued interest, shall be due and payable on the first anniversary of the First Payment Date, and the same day of each year thereafter, until the fifth (5th) anniversary of the Effective Date, when the entire balance of unpaid principal and accrued unpaid interest, as provided herein, shall be due and payable in full.

     **3.**    **Delinquency Charge.** If any payment hereunder is not paid on or before the tenth (10th) day after the due date thereof, a late charge equal to five percent (5%) of the amount of the late payment shall become due by Borrower to the then holder of this Note to compensate the holder hereof for the additional expense involved in handling delinquent payments. If

1017712.6

applicable, the late charge required hereby shall be subject to the provisions of this Note regarding legal interest limitations.

**4.** **Return Check Charge.** Borrower agrees to pay a fee not to exceed $25.00 for each check, negotiable order of withdrawal or draft that Borrower issues in connection with this Note that is returned because it has been dishonored.

**5.** **Security.** This Note is secured by all instruments heretofore, now or hereafter executed by Borrower in favor of Lender and by their terms securing the payment of this Note, including, without limitation, that certain Mortgage of even date herewith by and between Lender and Borrower (the "Mortgage"), encumbering the real property described therein and all improvements located thereon (the real property and improvements are hereinafter collectively referred to as the "Property").

**6.** **Priority.** The lien or liens securing this Note on the Property described in the Mortgage are valid liens and prior to any other encumbrances thereon.

**7.** **Manner and Place of Payment; Holidays.** All payments on this Note shall be made in coin or currency which, at the time or times of payment, are immediately available funds constituting legal tender for public or private debts in the United States of America. All payments on this Note shall be made at the address of Lender as indicated in the first paragraph hereinabove, or at such other address as Lender shall designate in writing. If the prescribed date of payment of any of the principal of or interest hereon is a Sunday or legal holiday, such payment shall be due on the next succeeding business day.

**8.** **Application of Payments; Prepayment; Prepayment Discount.** All sums paid hereon shall be applied first to the payment of late fees, if any, then to the payment of accrued interest due on the unpaid principal balance, and the remainder to the reduction of unpaid principal. Borrower may prepay this Note, in whole or in part, at any time without penalty. Any prepayment may, at the option of Borrower, be applied toward the payment of the principal installments next maturing upon this Note, that is, in the reverse order of maturity, i.e. reducing the amount of the next obligatory installment or installments. At any time prior to the first anniversary of the First Payment Date, Borrower may satisfy this Note in full by paying the then unpaid principal balance due hereunder, less a principal discount of Six Hundred Thirteen Thousand One Hundred Twenty Five and No/100ths Dollars ($613,125.00), plus accrued but unpaid interest due on the discounted principal balance of this Note, in certified funds. In the event of a default, all payments received after the default shall be applied first to pay reasonable attorney's fees and other costs and expenses of collection, if any, and then the remainder shall be applied as provided above. Lender acknowledges receipt of $75,000.00 that has been prepaid to be applied to the last payment maturing hereunder.

**9.** **Default and Acceleration.**

9.1 <u>Events of Default</u>. Time is of the essence of this Note, and time is of the essence in the performance of all obligations under this Note and the Mortgage. Any one or more of the following events or conditions shall constitute a default ("Default") hereunder: (i)

2

failure by Borrower to timely pay any amount within five (5) days after receipt of written notice and demand from Lender; or (ii) default or other failure by Borrower to perform any non-monetary covenant, condition or obligation of Borrower under this Note or the Mortgage within thirty (30) days after receipt of written notice and demand from Lender, provided, however, if such failure described in such written notice cannot reasonably be cured within thirty (30) days, Borrower shall not be deemed to be in default if the cure of such failure is commenced within such thirty (30) day period and thereafter diligently pursued to completion, or (ii) the occurrence of any other "Event of Default" under the Mortgage.

9.2    <u>Remedies</u>.  Upon a Default, Lender at its election may (but shall not be obligated to), without notice, do any one or more of the following: (i) exercise any and all rights and remedies afforded by this Note, the Mortgage and any other agreements between Lender and Borrower, as well as at law, equity or otherwise, including, without limitation, obtaining appointment of a receiver and/or foreclosure under the Mortgage; and/or (ii) then or at any time thereafter, without further notice and at its option, accelerate maturity and cause all of the unpaid principal balance of this Note, with interest, reasonable fees and charges accrued hereon, and all obligations in all instruments securing or collateral to it, to become immediately due and payable.

No delay or omission of Lender to exercise any right, power or remedy accruing upon the happening of a Default shall impair any such right, power or remedy or shall be construed to be a waiver of any such Default or any acquiescence therein.  No delay or omission on the part of Lender to exercise any option for acceleration of the maturity of the indebtedness, or for foreclosure or sale of the Property and/or any other collateral following any Default as aforesaid, or any other option granted to Lender hereunder in any one or more instances, or the acceptances by Lender of any partial payment on account of the indebtedness, shall constitute a waiver of any such Default, and each such option shall remain continuously in full force and effect.  No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other remedies provided for in this Note or any of the other loan documents between the parties, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder, or the Mortgage, or now or hereafter existing at law or in equity or by statute.  Every right, power and remedy given to Lender by this Note or the Mortgage shall be concurrent, and may be pursued separately, successively or together against Borrower, the Property and/or any other collateral granted as security under the Mortgage, and every right, power and remedy given by this Note or the Mortgage may be exercised from time to time as often as may be deemed expedient by Lender.

**10.    Annual Interest Rate Upon Default.**  All past due installments of principal and interest due and owing on this Note, shall bear interest from maturity thereof until paid at the lesser of (i) ten percent (10.00%) per annum or (ii) the Maximum Rate as defined herein.  Upon acceleration or maturity of the entire outstanding principal balance of this Note, the said principal amount shall bear interest from the date of acceleration or maturity until paid at the rate of ten percent (10%) per annum calculated and applied on the basis of actual days elapsed and a 365/366 day year, subject to paragraph 11 hereof, PROVIDED, HOWEVER, that the interest payable under this paragraph shall in no way exceed the Maximum Rate as defined herein.

3

1017712.6

**11.**    <u>Savings and Spreading</u>.  It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable New Mexico law governing the maximum rate or amount of interest payable on or in connection with this Note and the loan evidenced hereby (the "Loan") (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under New Mexico law).  <u>If</u> the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Note, or contracted for, charged, taken, reserved or received with respect to the Loan, or if acceleration of the maturity of this Note or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by law, <u>then</u> it is Borrower's and Lender's express intent that (i) all excess amounts theretofore collected by Lender be credited on the principal balance of this Note (or, if this Note has been or would thereby be paid in full, refunded to Borrower); and (ii) the provisions of this Note immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder.  The right to accelerate maturity of this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to collect any unearned interest in the event of acceleration.  All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the applicable usury ceiling.  Notwithstanding any provision contained in this Note or in the Mortgage that permits the compounding of interest, including without limitation any provision by which any of the accrued interest is added to the principal amount of this Note, the total amount of interest that Borrower is obligated to pay and Lender is entitled to receive with respect to this Note shall not exceed the amount calculated on a simple (<u>i.e.</u>, noncompounded) interest basis at the Maximum Rate (as defined hereinafter) on principal amounts actually advanced to or for the account of Borrower, including any initial funds advanced contemporaneously herewith and any advances made pursuant to the Mortgage (such as for the payment of taxes, insurance premiums and the like).  As used herein, the term "Maximum Rate" shall mean the maximum nonusurious rate of interest which may be lawfully contracted for, charged, taken, reserved or received by Lender from Borrower in connection with the Loan evidenced hereby under applicable New Mexico law (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under New Mexico law).

**12.**    <u>Attorney's Fees and Expenses</u>.  In the event that Lender or any other holder of this Note brings suit hereon, or employs an attorney or incurs expenses to compel payment of this Note or any portion of the indebtedness evidenced hereby, or to cure any defaults under this Note or the Mortgage, whether through suit, probate, insolvency, reorganization, bankruptcy, or any other legal or informal proceeding, Borrower agrees additionally to pay all reasonable attorney's fees, court costs and other reasonable expenses thereby incurred by Lender.

**13.**    <u>Successors and Assigns/Joint and Several Liability</u>.  This Note shall be binding upon Borrower and its successors and permitted assigns.

4

1017712.6

14.     **Waiver; Offset Rights**.  Except as otherwise provided in this Note, Borrower, both before and after maturity, hereby expressly (i) waives all protest, notice of protest, demand for payment, presentment for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of dishonor, bringing of suit, and diligence in taking any action to collect any amounts called for hereunder and in the handling of properties, rights or collateral at any time existing in connection herewith; (ii) consents to and waives notice of any one or more renewals, extensions or modifications of this Note, whether made to or in favor of Borrower or any other person or persons, regardless whether such renewal, extension or modification modifies the terms, interest rate or time for payment of this Note and regardless of the length of term of the renewal, extension or modification; (iii) consents to and waives notice of any substitution, exchange or release of any security now or hereafter given for this Note; (iv) consents to and waives notice of the release of any party primarily or secondarily liable hereon; (v) consents to and waives notice of any other indulgences, none of which shall otherwise affect the liability of Borrower for the indebtedness evidenced by this Note; and (vi) agrees that it will not be necessary for Lender, in order to enforce payment of this Note, first to institute suit against or to exhaust Lender's remedies against Borrower, or to proceed against any other security for this Note.

15.     **Assignment**.  Except as otherwise provided in the Mortgage, this Note may not be assigned by Borrower or otherwise assumed by any third party without Lender's prior written consent which consent shall not be unreasonably withheld.  Lender reserves the right, exercisable in Lender's sole discretion and without notice to Borrower or any other person, to sell participations, to assign its interest or both, in all or any part of this Note or the debt evidenced by this Note.

16.     **Definitions; Applicable Law.**  The terms "Borrower" and "Lender" and other nouns and pronouns include the singular and/or plural, as appropriate.  The terms "Borrower" and "Lender" also include their respective successors and permitted assigns.  This Note shall be governed by and construed in accordance with the laws of the State of New Mexico except where preempted by Federal law of the United States of America.  Performance by the parties hereunder shall be deemed to occur exclusively in Dona Ana County, New Mexico. The parties hereby irrevocably submit generally and unconditionally for themselves and in respect of their property to the jurisdiction of any state court, or any United States federal court, sitting in the City of Las Cruces, Dona Ana County, New Mexico, over any suit, action or proceeding arising out of or relating to this Note.  The parties further hereby irrevocably waive, to the fullest extent permitted by law, any objection that said party may now or hereafter have to the laying of venue in any such court and any claim that any such court is an inconvenient forum.

17.     **Commercial Purpose**.  Borrower warrants and represents to Lender and to all other holders of any debt evidenced by this Note that each loan, whether one or more, evidenced by this Note, is and shall be for business, commercial, investment or other similar purpose and not primarily for personal, family, household or agricultural use.

18. **Non-Recourse / Limited Recourse Note**.  THE LOAN EVIDENCED BY THIS NOTE SHALL BE NON-RECOURSE, AND LENDER SHALL NOT BE ENTITLED TO

5

1017712.6

ENFORCE OR TO ATTEMPT TO ENFORCE ANY DEFICIENCY OR OTHER JUDGMENT AGAINST THE BORROWER, ITS GENERAL PARTNER, NOR ANY OF THEIR RESPECTIVE MEMBERS, PARTNERS, HEIRS, PERSONAL REPRESENTATIVES, EXECUTORS, ADMINISTRATORS OR ASSIGNS (THE "BORROWER PARTIES") UNTIL SUCH TIME AS THE PLANNED UNIT DEVELOPMENT CONCEPT PLAN FOR THE PROPERTY, AS SUBMITTED ON MARCH 4, 2013, IS APPROVED BY THE CITY OF LAS CRUCES, NEW MEXICO (THE "PUD APPROVAL"). AFTER THE PUD APPROVAL, THE LOAN EVIDENCED BY THIS NOTE SHALL BE LIMITED IN RECOURSE. LENDER AGREES THAT, AFTER THE PUD APPROVAL, UPON THE OCCURRENCE OF A DEFAULT, LENDER SHALL LOOK SOLELY TO THE COLLATERAL IN THE MORTGAGE DESCRIBED ABOVE FOR SATISFACTION OF BORROWER'S OBLIGATION TO REPAY PRINCIPAL, INTEREST, AND ALL OTHER AMOUNTS DUE UNDER THIS NOTE, THE MORTGAGE, AND ANY OTHER INSTRUMENTS SECURING THE NOTE, AND ANY LOSSES, COSTS, DAMAGES, AND EXPENSES, WHETHER IN CONTRACT (INCLUDING UNDER ANY INDEMNITY OR WARRANTY), TORT (INCLUDING NEGLIGENCE), MISREPRESENTATION (OTHER THAN FRAUDULENT MISREPRESENTATION), EQUITY, BREACH OF DUTY, STRICT LIABILITY OR OTHERWISE AT LAW, ARISING UNDER OR IN CONNECTION WITH THE LOAN EVIDENCED BY THIS NOTE (INCLUDING ATTORNEYS' FEES AND COSTS AND EXPERT WITNESS FEES), OR ANY OTHER MATTERS RELATED THERETO, AND LENDER SHALL NOT SEEK A DEFICIENCY OR ANY OTHER JUDGMENT AGAINST THE BORROWER OR ANY OTHER PARTIES LIABLE UNDER THE LOAN IN EXCESS OF FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($500,000.00), WHICH, IN ADDITION TO THE COLLATERAL IN THE MORTGAGE, SHALL BE THE ABSOLUTE MAXIMUM AGGREGATE AMOUNT THAT LENDER SHALL BE ENTITLED TO COLLECT WITH RESPECT TO THE LOAN EVIDENCED BY THIS NOTE.

**THIS NOTE, THE MORTGAGE AND THE OTHER WRITTEN DOCUMENTS REFERENCING OR RELATED TO THIS NOTE REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Case 16-12947-j7    Doc 123    Filed 07/18/18    Entered 07/18/18 13:27:07    Page 11 of 24

**IN WITNESS WHEREOF,** Borrower has executed this Note to be effective as of the effective date first set forth above.

<u>**BORROWER:**</u>

**PARK RIDGE PROPERTIES, LLLP**
a New Mexico limited liability limited partnership

By: Park Ridge Properties GP, LLC
Its:  General Partner

Name: _____
        Robert H. Pofahl, President

1017712.6



| COUNTY OF DONA ANA | ) | MORTGAGE |
| STATE OF NEW MEXICO | ) ss | PAGES: 15 |

I Hereby Certify That This Instrument Was Filed for
Record On   OCT 27, 2014 04:47:05 PM
And Was Duly Recorded as Instrument #    1422271
Of The Records Of Dona Ana County

Witness My Hand And Seal Of Office,
Lynn J. Ellins, County Clerk, Dona Ana, NM

Deputy    Renee Torres



MORTGAGE    033227 CH/dg

This mortgage agreement (the "*Mortgage*") is made on the date stated below by and among the Mortgagor and Mortgagee who are identified and whose addresses are stated below. By signing this Mortgage, Mortgagor agrees to the terms and conditions and makes the covenants stated in this Mortgage.

DATE:                          Effective October 27, 2014

MORTGAGOR:                     Park Ridge Properties, LLLP,
                               a New Mexico limited liability limited partnership.

MORTGAGOR'S ADDRESS:           1340 Picacho Hills Drive, Suite 100
                               Las Cruces, New Mexico 88007

MORTGAGEE:                     Las Cruces Country Club, Inc., a New Mexico not-for-profit corporation

MORTGAGEE'S ADDRESS:           P.O. Box 876
                               Las Cruces, New Mexico 88004

NOTE:                          The promissory note of even date herewith in the original principal amount of Four Million Eight Hundred Seventy Eight Thousand One Hundred Twenty Five and No/100ths Dollars ($4,878,125.00) executed by Mortgagor and payable to the order of Mortgagee (the "*Note*") and maturing five (5) years after the date thereof.

PROPERTY:                      The real property located in Dona Ana County, New Mexico, more particularly described in the attached Exhibit A.

ARTICLE I
SECURITY

1.01.   MORTGAGE COVENANTS. For value received, the receipt and sufficiency of which Mortgagor acknowledges, and to secure the payment of the Indebtedness described herein and performance of the covenants and agreements of Mortgagor stated in this Mortgage, Mortgagor does grant, bargain, sell, remise, release, and convey unto Mortgagee, its successors and assigns, the Property described herein, with mortgage covenants, TO HAVE AND TO HOLD the Property, together with the rights, privileges, and appurtenances thereto belonging unto Mortgagee and Mortgagee's substitutes or successors forever. Mortgagor binds itself and its heirs, executors, administrators, personal representatives, successors and assigns to WARRANT AND FOREVER DEFEND the Property unto Mortgagee, and Mortgagee's substitutes or successors and assigns, against the claim or claims of all persons claiming or to claim the same or any part thereof.

1018149.5                          1

## ARTICLE II
## INDEBTEDNESS AND PAYMENTS

**2.01.    INDEBTEDNESS.**  The indebtedness (the *"Indebtedness"*) secured by this Mortgage shall mean and include any and all sums becoming due and payable pursuant to the Note and any and all renewals, extensions, replacements, rearrangements, substitutions, or modifications of the Note, or any part of the Note, as well as any and all other sums becoming due and payable by Mortgagor to Mortgagee as a result of future advances made by Mortgagee pursuant to the terms and conditions of this Mortgage, whether evidenced by notes, advances, bookkeeping entries, guaranty agreements, liens or security interest Mortgages, or any other method or means, including any and all renewals, extensions, replacements, rearrangements, substitutions, or modifications thereof.

**2.02.   APPLICATION OF PAYMENT.**  Unless applicable law provides otherwise, all payments received by Mortgagee from Mortgagor under the Note or this Mortgage shall be applied by Mortgagee in the following order of priority:  (a) amounts payable to Mortgagee under this Mortgage; (b) sums payable to Mortgagee under the Note, to be applied to principal or interest as provided in the Note; and (c) any other sums secured by this Mortgage in such order as Mortgagee, at Mortgagee's option, may determine.

## ARTICLE III
## MORTGAGOR'S REPRESENTATIONS, WARRANTIES, COVENANTS, AND AGREEMENTS

Mortgagor covenants, warrants, and represents to and agrees with Mortgagee as follows:

**3.01.    PAYMENT AND PERFORMANCE.**  Mortgagor shall make all payments on the Indebtedness when due (including any grace period) and shall punctually and properly perform all of Mortgagor's covenants, obligations and liabilities under this Mortgage.

**3.02.    TAXES AND ASSESSMENTS.**  Mortgagor shall pay all taxes and assessments against or affecting the Property as the same become due and payable, and, upon request by Mortgagee, Mortgagor shall deliver to Mortgagee such evidence of the payment thereof as Mortgagee may reasonably require.

**3.03.    INSURANCE.**  Mortgagor shall maintain in a form acceptable to Mortgagee, an insurance policy that (a) covers all of the improvements on the Property for their full insurable value as determined from time to time when the policy is issued and renewed, unless Mortgagee approves a smaller amount in writing, (b) contains an eighty percent (80%) co-insurance clause, (c) provides special causes of loss form coverage, (d) protects Mortgagee with a standard mortgagee clause, (e) provides flood insurance if the Property is in a flood hazard area, and (f) requires not less than thirty (30) days notice from the insurer to Mortgagee prior to modification,

1018149.5

2

termination, or lapse of such coverage. Mortgagor agrees to comply at all times with the requirements of the eighty percent (80%) co-insurance clause and agrees to deliver the insurance policy to Mortgagee promptly following execution of this Mortgage and to deliver a certificate of insurance evidencing such coverage upon execution hereof.

3.04   **MAINTENANCE OF PROPERTY; COMPLIANCE WITH LAWS.** Mortgagor agrees to keep the Property in good repair and condition, and to obey all laws, ordinances and restrictive covenants applicable to the Property at all times.

3.05.   **CONDEMNATION.** Mortgagor shall promptly notify Mortgagee of any action or proceeding (or threatened action or proceeding) relating to any condemnation or other taking, whether direct or indirect, of all or any part of the Property. Mortgagor shall, unless otherwise directed by Mortgagee in writing, file or defend its claim under any such action and prosecute same with due diligence to its final disposition. The proceeds of any award, payment, or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or any part thereof, or for conveyances in lieu of condemnation, are hereby collaterally assigned to Mortgagee as security for the Indebtedness.

3.06.   **RECORDING AND FILING.** Mortgagor shall cause this Mortgage and all amendments, supplements, extensions, and substitutions thereof to be recorded, filed, re-recorded, and refiled in such manner and in such places as Mortgagee shall reasonably request. Mortgagor shall pay all such recording, filing, re-recording, and refiling fees and other charges.

## ARTICLE IV
## EVENTS OF DEFAULT

The occurrence of any one of the following events shall be a default under this Mortgage ("*Event of Default*"):

4.01.   **FAILURE TO PAY INDEBTEDNESS.** Any of the Indebtedness that is past due is not paid within five (5) days after receipt by Mortgagor of written notice and demand from Mortgagee.

4.02.   **NONPERFORMANCE OF COVENANTS.** Any failure of Mortgagor to perform any non-monetary covenant, condition, or obligation of Mortgagor under this Mortgage within thirty (30) days after Mortgagor's receipt of written notice from Mortgagee regarding such failure, provided, however, if such failure described in such written notice cannot reasonably be cured within thirty (30) days, Mortgagor shall not be deemed to be in default if the cure of such failure is commenced within such thirty (30) day period and thereafter diligently pursued to completion.

4.03.   **BANKRUPTCY OR INSOLVENCY.** Mortgagor any person obligated to pay any part of the Indebtedness: (i) admits in writing its inability to pay its debts or makes a general assignment for the benefit of creditors; (ii) commences any case, proceeding, or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution, or composition of it or

its debts under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors; (iii) in any involuntary case, proceeding, or other action commenced against it which seeks to have an order for relief entered against it, as debtor, or seeks reorganization, arrangement, adjustment, liquidation, dissolution, or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) fails to obtain a dismissal of such case, proceeding or other action within sixty (60) days of its commencement, or (b) converts the case from one chapter of the United States Bankruptcy Code to another chapter, or (c) is the subject of an order for relief; (iv) conceals, removes, or permits to be concealed or removed, any part of its property, with intent to hinder, delay, or defraud its creditors or any of them, or makes or suffers a transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance, or similar law; or (v) has a trustee, receiver, custodian, or other similar official appointed to take possession of all or any part of the Property or any other of its property or has any court take jurisdiction of any other of its property which remains undismissed for a period of sixty (60) days.

    4.04.  TRANSFER OF PROPERTY.  Mortgagor sells or transfers all or any part of the Property or any interest therein without the prior consent of Mortgagee, which Mortgagee may withhold in its sole and absolute discretion.

## ARTICLE V
### DEFAULT AND REMEDIES

    5.01.  ACCELERATION.  Upon the occurrence of an Event of Default, Mortgagee may declare the entire principal of the Indebtedness then outstanding (if not then due and payable), and all accrued and unpaid interest thereon, all premiums payable thereunder and all other obligations of Mortgagor hereunder to be due and payable immediately, and upon any such declaration the principal of the Indebtedness and said accrued and unpaid interest shall become and be immediately due and payable.

    5.02.  RIGHT OF FORECLOSURE AND SALE.  Upon and after the occurrence of an Event of Default, Mortgagee, with or without entry, personally or by its agents or attorneys, insofar as applicable, may: (a) institute judicial proceedings for the complete or partial foreclosure of this Mortgage; or (b) apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Property and of all the earnings, revenues, rents, issues, profits and income thereof; or (c) take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Indebtedness, or in this Mortgage, or in aid of the execution of any power herein granted, or for any foreclosure hereunder or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee shall elect.

    5.03.  CONVEYANCE OF TITLE.  Upon the completion of any sale or sales made by Mortgagee under or by virtue of this Article, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient deed, or good and sufficient deeds, conveying, assigning and transferring the estate, right, title and interest in and to the Property and rights sold.  Mortgagee is hereby appointed the true and lawful attorney of Mortgagor, in its name and stead, for the sole purpose to make all necessary

10121495

4

conveyances, assignments, transfers and deliveries of the Property and rights so sold and for that sole purpose Mortgagee may execute all necessary deeds of conveyance, assignment and transfer, and may substitute one or more persons with like power, Mortgagor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. This power of attorney shall be deemed to be a power coupled with an interest and not subject to revocation. Nevertheless, Mortgagor, if so requested by Mortgagee, shall ratify and confirm any such sale or sales by executing and delivering to Mortgagee or to such purchaser or purchasers all such deeds as may be advisable, in the judgment of Mortgagee, for the purpose, and as may be designated in such request. Any such sale or sales made under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

5.04. **APPLICATION OF PROCEEDS.** The purchase money, proceeds or avails of any sale made under or by virtue of this Article, together with any other sums which then may be held by Mortgagee under the provisions of this Article or otherwise, shall be applied as follows:

First: To the payment of the costs and expenses of such sale and of any judicial proceedings wherein the same may be made, and of all expenses, liabilities and advances made or incurred by Mortgagee under this Mortgage, together with interest at the default rate provided in the Note, or if the Note has been paid off, then at the default rate provided in the loan documents relating to other Indebtedness then outstanding.

Second: To the payment of any other sums required to be paid by Mortgagor pursuant to any provisions of this Mortgage or of the Indebtedness.

Third: To the payment of the whole amount then due, owing or unpaid upon the Indebtedness for principal and interest, with interest on the unpaid principal and accrued interest at the rate specified in the Indebtedness, from and after the happening of any Event of Default described above from the due date of any such payment of principal until the same is paid.

Fourth: To the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same.

5.05. **RIGHT OF MORTGAGEE TO MAKE OFFSET BID.** Upon any sale made under or by virtue of this Article, Mortgagee may bid for and acquire the Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage. Mortgagee, upon so acquiring the Property, or any part thereof shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

10182149.5

5

**5.06.** **CUMULATIVE REMEDIES.** This Mortgage is granted upon the statutory condition for the breach of which it is subject to foreclosure as provided by law. Each remedy provided in this Mortgage is distinct and cumulative to all other rights or remedies under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

**ARTICLE VI**
**MISCELLANEOUS PROVISIONS**

**6.01.** **RELEASE OF LIEN.**

**a.** **PARTIAL RELEASE.** Provided Mortgagor is not otherwise in material breach of the Note or this Mortgage, the Mortgagee will, at Mortgagor's request, discharge from the lien of this Mortgage, and operation thereof, any of the parcels shown on the attached Exhibit B on payment to the Mortgagee of the Release Price for each parcel, or group of parcels, as provided in the attached Exhibit C, plus the interest accrued to the date of the request at the rate of six percent (6%) per annum on the unpaid principal balance of the Note, and the costs of executing and recording the partial release of Mortgage. Mortgagor shall receive credit against the Release Price for both regularly scheduled payments and prepayments of principal under the Note. If the amount of any regularly scheduled payment, or any voluntary prepayment, by Mortgagor shall be more than the Release Price credited for a parcel, or group of parcels, such excess payment amount shall be credited against the Release Price for future releases of a parcel, or group of parcels, as the case may be. Additionally, Mortgagee shall, upon request of Mortgagor, discharge from the lien of this Mortgage, and operation thereof, any right of way or road shown on Exhibit B (*"Roadways"*) or Tract (drainage easement, utility easement, or ponding easement) within the Property, as shown on Exhibit B, for the Release Price of Fifty Cents ($0.50) per foot.

**b.** **FULL RELEASE.** Upon payment of all sums and the performance of all obligations secured by this Mortgage, Mortgagee shall release this Mortgage at Mortgagor's expense.

**6.02.** **SUBORDINATION TO DECLARATION.**

**a.** **SUBORDINATION.** The Mortgagee agrees to subordinate the lien of this Mortgage, and operation thereof, to any right of way, drainage easement, utility easement, or ponding easement (collectively *"Required Easements"*) on the Property required by the City of Las Cruces in order for Mortgagor to obtain subdivision plat approval of Mortgagor's approximately 34.112 acre property more particularly described in the Warranty Deed of even date herewith from Mortgagee to Mortgagor recorded in the Dona Ana County, New Mexico, records under document #_____.

**b.** **CONTINUING EFFECT.** The Subordination constitutes a continuing agreement of subordination, and Mortgagor, its successors and assigns, may, without notice to or consent by Mortgagee (or any successor in interest to the owning and holding of the lien of this Mortgage, and operation thereof,) amend any term or provision of the Required Easements, so

1018149.5

6

long as such amendment does not adversely affect the subordinate position of Mortgagee's lien under this Mortgage with respect to the Required Easements, or materially affect the value of the Property. Mortgagee agrees that a foreclosure of the lien of this Mortgage (or a conveyance in lieu thereof) will not in any way extinguish or terminate the Required Easements and that Mortgagee (and any successor in interest) will thereafter continue to recognize and honor the Required Easements.

          c.    NO WAIVER. No waiver shall be deemed to be made by Mortgagee hereunder due to its subordination of its lien under this Mortgage to the Required Easements, and operation thereof, except as to the subordinate position of the lien with respect to the Required Easements, and no waiver shall be deemed to be made by Mortgagee hereunder as to its rights to enforce its loan documents evidencing the Indebtedness and to collect from Mortgagor the Indebtedness, except as to its subordinate position of its lien under this Mortgage to the Required Easements.

      6.03.   NOTICE. Except for any notice required under applicable law to be given in another manner, all notices shall be sent either by (a) certified mail, return receipt requested, in which case notice shall be deemed delivered upon receipt, (b) overnight delivery using a nationally recognized overnight courier, in which case notice shall be deemed delivered one (1) business day after deposit with such courier, or (c) personal delivery. The addresses of Mortgagor and Mortgagee for notice purposes may be changed by written notice to the other party; provided, however, that no notice of a change of address shall be effective until actual receipt of such notice.

      6.04.   SUCCESSORS AND ASSIGNS BOUND. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Mortgagee and Mortgagor.

      6.05.   GOVERNING LAW. This Mortgage shall be governed by the applicable laws of the State of New Mexico and the United States of America.

      6.06   NON-RECOURSE / LIMITED RECOURSE NOTE. Notwithstanding any other provision of this Mortgage, Mortgagee acknowledges and agrees that the loan evidenced by the Note and this Mortgage is non-recourse/limited recourse, as the case may be, as provided in the Note.

[signatures on following pages]

1618149.5

7

EXECUTED as of the date first stated above.

> MORTGAGOR:
>
> PARK RIDGE PROPERTIES, LLLP,
> a New Mexico limited liability limited partnership
>
> By: PARK RIDGE PROPERTIES GP, LLC
> Its: General Partner
>
> By: _____
> Robert H. Pofahl, President

STATE OF NEW MEXICO )
                            )
COUNTY OF DONA ANA )

    This instrument was acknowledged before me, on the **27** day of **October**, 2014, by Robert H. Pofahl, President of Park Ridge Properties GP, LLC, a New Mexico limited liability company, on behalf of said limited liability company, and acting in its capacity as General Partner of Park Ridge Properties, LLLP, a New Mexico limited liability limited partnership, on behalf of said partnership.

                             _____
                             Notary Public in and for the State of New Mexico
                             Notary's Printed Name: **Carl L. Hunter**
                             Commission Expires: **12.6.17**

OFFICIAL SEAL
CARL L. HUNTER
NOTARY PUBLIC - STATE OF NEW MEXICO
My commission expires: **12.6.17**

## PURCHASE AGREEMENT

Cruces Equity Partners, LLLP ("**Buyer**"), and Philip J. Montoya, Chapter 7 trustee of the Las Cruces Country Club, Inc. bankruptcy estate ("**Seller**"), subject to approval by the United States Bankruptcy Court for the District of New Mexico, hereby agree to an asset purchase on the following terms:

1. The terms of the offer from Buyer to Seller dated May 23, 2018 (the "**May 23 Offer**") attached hereto as Exhibit B-1, except as specifically modified herein.
2. The Purchase Price shall be $2.2MM cash.
3. The FVR Claim shall be paid in full at closing of the sale, and the money paid on such claim shall be applied to pay the Purchase Price
4. Buyer and Seller acknowledge that the fraudulent transfer claims asserted by Seller in Adv. No. 17-1084-j have been dismissed and are for that reason of no value to the Seller or the creditors.
5. Seller shall file a motion seeking bankruptcy court approval of this agreement on or before Wednesday, July 18, 2018, rather than by May 31, 2018, as stated in the May 23 Offer.

This agreement is effective as of July 2, 2018

Seller


Philip J. Montoya, Chapter 7 trustee
of the Las Cruces Country Club, Inc. bankruptcy estate

Buyer

CRUCES EQUITY PARTNERS, LLLP


By:
Its:

May 23, 2018

PHILIP J. MONTOYA,
Chapter 7 Trustee
c/o Daniel White
Askew & Mazel, LLC
1122 Central Ave. SW; Suite 1
Albuquerque, NM 87102

RE:    ***Las Cruces Country Club, Inc.,*** Case No. 16-12947-j7 (Bankr. NM)
         <u>AGREEMENT FOR SALE AND PURCHASE OF ASSETS</u>

Dear Messrs. Montoya and White:

Cruces Equity Partners, LLLP ("Buyer") agrees to Purchase from Philip J. Montoya (the "Trustee"), as Chapter 7 Trustee of the bankruptcy estate of the Las Cruces Country Club, Inc. ("Debtor"), that certain Promissory Note executed by Park Ridge Properties, LLLP ("Park Ridge") as the maker, dated October 27, 2014, and made payable to the order of Debtor in the original principal sum of $4,878,125.00 (the "Note"), and all other assets of the bankruptcy estate of Las Cruces Country Club, Inc. (the "Estate"), and the Trustee agrees to sell such Note and assets to Buyer according to the following terms and conditions:

<u>Purchase Price and Application of Purchase Price</u>:

1.  Buyer will pay the Estate the total of sum of $1.9 million cash (the "Purchase Price").

2.  In consideration of the Purchase Price, the Trustee will endorse the Note to the order of Buyer, without recourse, and will transfer to Buyer all right, title, and interest in and to

     i.   the Note and all collateral documents that secure the Note obligations, including (without limitation) the mortgage securing payment and other obligations of the maker of the Note, and all guaranties securing payment of the Note;

     ii.  any mortgagee's title policy issued to Debtor for the mortgage securing payment of the Note; and

     iii. all assets of the Estate including, without limitation, all Fraudulent Transfer Claims, such as, for example and not by way of limitation, those fraudulent transfer claims asserted by the Trustee in Adversary Proceeding No. 17-01084-j on the docket of the Bankruptcy Court.

3. The sale and purchase contemplated by this agreement will close (a) no later than 45 days after finality of a Bankruptcy Court order approving the sale by the Trustee to Buyer upon the terms herein set forth, or (b) at such other date that the Trustee and Buyer agree in writing.

4. The Trustee has objected to the claim of First Valley Realty, Inc. (Claim No. 1). If this Agreement is approved by the Court, the Trustee will (a) withdraw his objection and will not further object to First Valley Realty, Inc.'s claim, and (b) will not object to the claim of Sonoma Ranch Golf Course, LLC and Sonoma Ranch Subdivision Ltd. Co. (Claim No. 7).

5. The sale of assets will be free and clear of any liens, claims, and interests of the Estate and any third parties.

6. Further terms and conditions:

Approval by Bankruptcy Court:    This agreement shall be subject to approval by the Bankruptcy Court. For purposes of this Agreement, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of New Mexico. The Trustee will seek expedited approval of this agreement from the Bankruptcy Court on shortened notice. By May 31, 2018, the Trustee will file the motion for approval of the sale of assets contemplated by this agreement and will ask the Bankruptcy Court to treat Buyer as a good faith purchaser. If this agreement and the sale contemplated by this agreement are not approved by the Bankruptcy Court, the escrowed funds shall be returned to Buyer.

Escrow Funds:    $100,000 refundable only (a) if this Agreement is not approved by the Bankruptcy Court or (b) if the Court's approval order is appealed or otherwise fails to become final after the expiration of 14 days after the date of entry of such order or (c) as provided below. Escrow funds to be placed in escrow within 72 hours from Trustee's written acceptance of this OFFER.

Title Company:    Las Cruces Abstract and Title Company
119 S. Campo St.
Las Cruces, NM 88001

Closing:    If the sale the subject hereof is approved and authorized by the Bankruptcy Court, the closing will be held at the Title Company within the time specified above (see para. 3).

| | |
|---|---|
| Closing Costs: | Each party will be responsible for its own attorney's fees. The Trustee will pay all closing costs and/or escrow fees. |
| Title Policy: | Buyer's purchase will be contingent upon the Title Company committing, within 20 days of the date of this agreement, to issue to Buyer at the Closing either (a) an assignment endorsement to Debtor's mortgagee's title policy for the mortgage securing payment of the Note; or (b) a mortgagee's title policy for the said mortgage. |
| No Broker: | Buyer and the Trustee represent that no broker is involved but the Trustee asserts that he enlisted the services of and is seeking Bankruptcy Court approval to employ Tom Whatley as consultant. |
| Break-Up Fee: | Buyer and Trustee agree that, if this OFFER is accepted by the Trustee, the escrow funds must be promptly returned to Buyer and a $200,000.00 break-up fee must be paid to Buyer in the event that (a) the Trustee decides for any reason to withdraw from this agreement, or (b) a better or higher offer is either accepted or promoted by the Trustee or the Trustee elects to request an auction for the sale of the Note; and that such break-up fee shall become an obligation of the bankruptcy estate of the Debtor and shall become secured by a first-priority lien upon the Note and all proceeds of the Note, superior to the rights and interests of the Debtor and of all creditors of the Debtor or the bankruptcy estate of the Debtor. |

Signed and dated as of May 23, 2018.

**Cruces Equity Partners, LLLP**

By:

As: _____

Trustee

_____

**PHILIP J. MONTOYA,** as Chapter 7 Trustee of the Bankruptcy Estate of Las Cruces Country Club, Inc. in Case No. 16-12947-j7 (Bankr. NM)