UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: )
 )
Las Cruces Country Club, Inc. )
a New Mexico Non-Profit Corp., ) Case No. 16-12947-j7
Debtor. ) (Chapter 7)

OBJECTION OF CREDITOR SONOMA RANCH
TO CHAPTER 7 TRUSTEE'S SECOND MOTION TO APPROVE
SALE OF ALL ASSETS OF BANKRUPTCY ESTATE

TO THE DEBTOR AND ALL CREDITORS AND PARTIES IN INTEREST:

Sonoma Ranch Golf, LLC and Sonoma Ranch Subdivision, Ltd., Co., collectively and as creditors, file this objection to the Chapter 7 Trustee's Second Motion to Approve Sale of All Assets of the Bankruptcy Estate Free and Clear of Liens, Claims, or Interests. (Doc. 123) The Sonoma Ranch creditors partly support the proposed sale, but oppose those provisions of the Purchase Agreement, and the Trustee's Motion, which would impermissibly satisfy the claim of one unsecured creditor, First Valley Realty, Inc. (also herein "FVR"), over and before all other situated creditors.

Paragraph 5 of the Trustee's Motion, and paragraph 3 of the Purchase Agreement signed by the Bankruptcy Trustee and Buyer, ask this Court to authorize the satisfaction of FVR's unsecured and non-priority claim simultaneous with closing of the proposed sale. Allowing satisfaction of this one unsecured creditor's claim would constitute an impermissible preference, and is disallowed by the Bankruptcy Code in this Chapter 7 proceeding.

Sonoma Ranch is the creditor with the largest claim against the Las Cruces Country Club Estate, and therefore opposes the preference for one creditor, FVR, over all other equally situated

creditors. Sonoma Ranch otherwise does not object to the Motion except for this unlawful preference. For their objection and response, the Sonoma Ranch creditors further state:

1. Collectively the Sonoma Ranch entities are the largest creditor in this bankruptcy proceeding, and filed a timely proof of claim for $855,080.63. (Claim No.7)

2. The Trustee's Motion before this Court now requests authorization to sell the assets of Debtor Las Cruces Country Club Estate, to Cruces Equity Partners LLLP (also herein "CEP") as the "Buyer", for $1.9M. Trustee Exh. B.

3. Paragraph 5 of the Trustee's Motion also proposes to simultaneously satisfy the claim of one unsecured creditor at the closing of this proposed sale. The Motion provides:

> The FVR Claim shall be paid in full at closing of the sale, and the
> money paid on such claims shall be applied to the Purchase Price.

4. Paragraph 3 of the Purchase Agreement, between the Trustee as Seller, and Cruces Equity Partners LLLP as Buyer, likewise provides:

> The FVR Claim shall be paid in full at closing of the sale, and the money
> paid on such claim shall be applied to pay the Purchase Price.

5. Approving the Trustee's Motion, and authorizing the payment of FVR's Claim at closing, to the exclusion of all other creditors, would effectively be the satisfaction of FVR's unsecured claim in full, and at this closing.

6. The two critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, and the equitable distribution of that property among the debtor's creditors. *In re DBSI*, 869 F.3d 1004, (9th Cir. 2017). The fundamental purpose of bankruptcy is a fair distribution of the debtor's assets within the classes of creditors determined by Congress. *In re Deuel;* 594 F.3d 1073 (9th C. 2010). A fundamental policy of the Bankruptcy Code is the equality of distribution, and the statute on distribution of

bankruptcy estate property is a Congressional expression of this policy. *In re Swann,* 149 B.R. 137 (D.S.D. 1993)  Chapter 7 is designed to promote equal treatment among classes of creditors, versus the result produced outside of bankruptcy when creditors who are swifter and more aggressive in their collection efforts benefit at expense of other creditors.  *In re Conference of African Union First Colored Methodist Protestant Church;* 184 B.R. 207 (D. Del. 1995). A Chapter 7 trustee is charged with selling the property in the estate and distributing the proceeds to the debtors' creditors. *Harris v. Viegelahn,* __ U.S.__, 135 S.Ct. 1829, 191 L.Ed. 2d 783, on remand 608 Fed.Appx. 252, 2015 WL 3877759.  Once collected by the trustee, the property of the estate is subject to the detailed methodology prescribed in the Bankruptcy Code for distributing funds to creditors and others. *In re Hicks;* 300 B.R. 372 (D. Idaho. October 2003). In Chapter 7, priority is an absolute command; lower priority creditors cannot receive anything until higher priority creditors have been paid in full. *Czyzewski v. Jevic Holding Corp.,* __ U.S.__, 137 S.Ct. 973, 197 L.Ed.2d 398, on remand 688 Fed.Appx. 166, 2017 WL 1880820. Similarly situated creditors are entitled to share in a pro rata distribution of estate assets unless otherwise provided by the Bankruptcy Code's priority scheme.  *In re Glenn,* 345 B.R. 831 (N.D. Ohio, 2006). The distribution of proceeds must be made in accordance with the section of the Bankruptcy Code governing distribution of estate property.  *In re Tolson;* 338 B.R. 359 (C.D. Illinois 2005);  *In re Raynard;* 327 B.R. 623 (W.D. Michigan 2005)(Code establishes a scheme for distributing all property of the estate without distinction between entireties interest and other property).  The distributions of assets in Chapter 7 must follow the order prescribed by the Bankruptcy Code. *Czyzewski v. Jevic Holding Corp.*; __ U.S. __, 137 S.Ct. 973 __ L.Ed.__, (2017).  In Chapter 7 priority is an absolute demand. *Czyzewski v. Jevic Holding Corp.*; __ U.S. __, 137 S.Ct. 973 __ L.Ed. __(2017).

7. Because the Chapter 7 distributive priority scheme provides express statutory exceptions and modifications to this scheme, no other exceptions may be inferred in absence of contrary legislative intent. *In re MCO Wash, Inc.;* 555 B.R. 159 (E.D.N.Y.2016). The statutory priority scheme for the distribution of property for a Chapter 7 estate is mandatory, and Congress did not authorize bankruptcy courts to exercise discretion. *In re Chambers,* 500 B.R. 221 (N.D. Georgia Atlanta Div. October 2013). Courts may not create priorities within classes. *Id.* The bankruptcy distribution is intended to ensure that no creditor, nor class, receives more than its fair due. *In re Bashas' Inc.*; 437 B.R. 874 (D. Arizona, August 2010).

8. Here, the Trustee previously persuaded this Court to reject an earlier signed Purchase Agreement for the sale of the Debtor's very same assets, but at that time to be sold for $3.3M. At that time in April, 2018, the Buyer had already escrowed the $3.3M in available funds, and then was ready to close. (Doc. 69). Sonoma Ranch filed a memorandum brief in support of the earlier $3.3M Purchase Agreement.

9. The earlier Purchase Agreement between the Trustee and Buyer also adopted two addendum, which assured the satisfaction of all creditors in full at the time of closing, including the full satisfaction of Sonoma Ranch's claim.

10. At the time the earlier $3.3M Purchase Agreement was on the table, Sonoma Ranch argued that if that offer was not approved, creditors like Sonoma Ranch would have no assurance that any Buyer would participate in an auction, or would bid an amount equal to, or more than, the $3.3M already assured by the then-escrowed funds. At the time, Sonoma Ranch also argued that if that $3.3M offer was not accepted, creditors like Sonoma Ranch would have no assurance that the Trustee would be capable of satisfying Sonoma Ranch and all other creditors in full, and promptly doing so at closing. As the largest creditor of the Debtor's Estate,

the Sonoma Ranch creditors urged support for all terms of the original Purchase Agreement based upon the certainty of payment in full, at the earliest possible date, and given the certainty of performance as assured by escrowed funds.

11. Over the past two years, the Sonoma Ranch creditors have endured significant economic hardship and losses due to the bankruptcy stay of the state district court proceedings initiated by Sonoma Ranch, and as the result of other delays resulting from this bankruptcy proceeding.

12. To assure that the present $1.9M offer and Purchase Agreement are not lost, as in the case of the earlier $3.3M agreement, Sonoma Ranch asks that the Court approve the sale purchase price, but reject any preference of, and the effective disbursement to, the one unsecured creditor FVR over all others. The creditor claim of FVR must not be satisfied at closing, and the Court must either disburse proceeds of the proposed sale to all creditors in full at closing, or disburse no proceeds at closing even if characterized as something other than a distribution.

WHEREFORE, the Sonoma Ranch creditors respectfully request that the Court grant Trustee's Motion to the extent it would authorize the sale of Estate assets for the offered purchase price of $1.9M; and

FURTHERMORE, that this Court deny the Trustee's Motion to the extent it proposes to satisfy the claim of one creditor, FVR, in preference to all others likewise situated as unsecured creditors, or proposes any creditor's claim over the claim of Sonoma Ranch creditors.

Respectfully Submitted,

CERVANTES LAW FIRM, P.C.

*/s/ Joseph Cervantes*
Joseph Cervantes
Attorney for Sonoma Ranch Golf, LLC, and
Sonoma Ranch Subdivision Ltd., Co.
2610 South Espina
Las Cruces, NM 88001
(575) 526-5600

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Objection of Sonoma Ranch to Trustee's Second Motion to Approve Sale of Assets was electronically filed with the Court via the CM/ECF system. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on this 6th day of August, 2018:

| | |
|---|---|
| Daniel White | Robert R. Feuille |
| Askew & Mazel, LLC | James M. Feuille |
| Attorney for Philip J. Montoya, Trustee | Scott Hulse, P.C. |
| 1122 Central Ave. SW; Suite 1 | 1100 Chase Tower |
| Albuquerque, NM 87102 | 201 East Main Drive |
| (505) 433-3097; Fax: (505) 717-1494 | El Paso, TX 79901 |
| dwhite@askewmazelfirm.com | (915) 533-2493; Fax: (915) 546-8333 |
| | bfeu@schotthulse.com |
| | jfeu@scotthulse.com |
| | Attorney for First Valley Realty, Inc. Cruces Equity Partners, LLC, Park Ridge Properties, LLLP |

*/s/ Joseph Cervantes*
Joseph Cervantes