UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In Re:

LAS CRUCES COUNTRY CLUB, INC,
    a New Mexico Non-Profit Corp.,

    Debtor

LAS CRUCES COUNTRY CLUB, INC.

    Debtor,

v.

FIRST VALLEY REALTY, INC.

    Creditor.

Case No. 16-12947-j7

### FIRST VALLEY REALTY, INC.'S AMENDED RESPONSE TO DEBTOR'S OBJECTION TO CLAIM #1 FILED BY CREDITOR FIRST VALLEY REALTY, INC. (doc. 134)

TO THE HONORABLE ROBERT H. JACOBVITZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

    First Valley Realty, Inc. ("FVR" or "Respondent"), creditor, files this Response to the Debtor's Objection to Claim #1 by FVR (the "Objection") (doc. 134). This Response amends the Response filed September 7, 2018 (at doc. 146) and is filed solely to assure that the Response is filed under the proper ECF "event". Respondent FVR would should the Court as follows:

#### INTRODUCTION

    Respondent is struck by how similar Debtor's Objection is to the argument put forth by the Chapter 7 Trustee contending that the Debtor's principal asset, the Park Ridge Note, had no due date and was, therefore, an illusory obligation. Here, the Debtor essentially argues that, the Debtor's obligation to FVR for real estate commission is controlled by a promissory note the Debtor executed in favor of FVR; that the promissory note would be due only when the Debtor

received the first $1,000,000.00 installment payment on the Park Ridge Note, which has not occurred and apparently will not occur; and that, therefore, FVR is not owed one red cent, now or ever. The Debtor's argument is insupportable. FVR provided valuable real estate brokerage services to the Debtor, listing and marketing Debtor's real estate, and FVR earned its commission when the sale of the Debtor's real estate closed. The Debtor's promise, expressed in the Debtor's promissory note, to pay the commission upon the occurrence of a post-sale event that has not occurred, and apparently will not occur, does not relieve the Debtor of the obligation to pay the earned commission. The fact that FVR gratuitously accommodated the Debtor's request to be allowed to pay the commission sometime after the commission was earned – even though FVR was under no obligation to accommodate the Debtor's request – does not operate to wholly relieve the Debtor of its obligation to pay the commission.

## RESPONSE

1. FVR denies that Debtor's objection is valid, but admits the remainder of the allegations of paragraph 1 of the Objection.

2. In response to paragraph 2 of the Objection, FVR admits that Debtor has not received "the first $1,000,000.00 payment due on the Park Ridge Note," but denies that "no amounts are currently due to FVR." (Objection, para. 2.) The Debtor's bankruptcy estate will soon receive $2.2 million in exchange for the Park Ridge Note. Without agreeing with the Debtor's objection, FVR asserts that FVR's commission has been earned and that, at the very latest, upon the Trustee's receipt of the $2.2 million purchase price for the Park Ridge Note, the Debtor's promissory note to FVR will come due.

3. In response to paragraph 3 of the Objection, FVR states that the Debtor's promissory note to FVR speaks for itself, but denies that the Debtor's objection supports nonpayment of FVR's commission, as argued by Debtor.

4. In response to paragraph 4 of the Objection, FVR admits that the Debtor has yet to receive a payment from Park Ridge, but denies the Debtor's legal conclusions that FVR did not earn its commission and that such commission is not now owed.

5. In response to paragraph 5 of the Objection, FVR admits the Collateral Assignment was recorded on December 9, 2016, but denies the remainder of the allegations of paragraph 5.

### REASONS OBJECTION SHOULD BE OVERRULED AND FVR'S CLAIM PAID

6. FVR earned its commission upon the closing of the sale of the Debtor's real estate to Park Ridge and LC Medical on or about October 24, 2014. The Debtor did not want to pay the full commission at closing. The Debtor asked FVR to accept a promissory note for a portion of the commission, $191,143.23. Although was not obligated to do so, FVR graciously accommodated the Debtor's request. The Debtor issued the promissory note to FVR. In the promissory note, the Debtor acknowledged its obligation to pay $191,143.23 of earned commissions and promised to pay the $191,143.23 in the manner specified in the promissory note. The Debtor also provided security for the obligation, a collateral assignment of the Park Ridge Note. The Debtor now objects to paying FVR *any part of the earned commission* simply because of an ambiguity in the due date of the promissory note.

7. "It is well settled that a broker has earned his agreed commission when he produces a prospect who is ready, willing and able to purchase on terms agreeable to the seller, Williams v. Engler, 46 N.M. 454, 131 P.2d 267; Wilson v. Sewell, 50 N.M. 121, 123, 171 P.2d 647; Simmons v. Libbey, 53 N.M. 362, 208 P.2d 1070, 12 A.L.R.2d 1404. This is precisely what happened in this

case." *Willis T. Stewart Realty Co. v. Brock*, 1955-NMSC-101, ¶ 20, 60 N.M. 216, 225, 290 P.2d 682, 687.

8. Here, in the Listing Agreement between the Debtor and FVR, the Debtor agreed that "the commission shall be earned by Broker [FVR], and Owner [the Debtor] agrees to pay the commission to Broker, upon the occurrence of any of the following events:  A. The Property is sold to a purchaser procured by Broker, Owner, or anyone else; . . . .  The commission shall be paid upon the earlier of ***the closing*** or ten (10) calendar days after the occurrence of the applicable event set forth above."  (*See Listing Agreement,* para. 8. (emphasis added).)

9. The Debtor cannot argue in good faith that, under the Listing Agreement with FVR, the commission was not earned and payable at the time of the closing of the sale of the Debtor's real estate, on October 24, 2014.  Nor can the Debtor argue in good faith that FVR should not be paid.  The Debtor's bankruptcy estate is about to receive $2.2 million from the sale of the Park Ridge Note.  The sale of the Park Ridge Note is set to close in a very few weeks, on September 28, 2018.  Upon receipt of the $2.2 million, it is arguable that the terms of the Debtor's promissory note will have been satisfied and the Debtor's promissory note will be payable in full.

10. The $2.2 million sale of the Park Ridge Note is expected to generate enough money to pay all claims and administrative expenses in full, even late-filed claims, and to return a substantial surplus to the Debtor.  If the FVR claim is not paid, the Debtor is expected to receive more than $1 million from the sale of the Park Ridge Note.  In other words, the Debtor will receive from the sale of the Park Ridge Note the same amount the Debtor wanted to receive before paying FVR's commission, $1 million.  Thus, even if the Debtor's contention is treated as plausible, the Debtor's promissory note will be due and payable when the sale of the Park Ridge Note closes.

11. Regardless, Section 502 of the Bankruptcy Code provides that an objection based solely on the contingent or unmatured nature of a claim is insufficient to deny such a claim: "if such objection is made, the court, after notice and hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and *shall allow such claim* in such amount, *except to the extent that* – (a) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable for a reason *other than because such a claim is contingent or unmatured*." 11 U.S.C. § 502(b)(1) (emphasis added). The plain language of the statute undermines Debtor's objection, which merely states that "no amounts are *currently* due." (Objection, para. 2.) In other words, The Debtor's sole objection is that FVR's promissory note is not yet mature or remains contingent. Section 502(b)(1) rejects immaturity and contingency as valid bases for denial of FVR's claim.

12. Further, the Debtor's objection is reminiscent of the Chapter 7 Trustee's argument that the Park Ridge Note was illusory because, according to the Trustee, the Park Ridge Note did not contain a definite due date and payment was contingent upon some outside event which might never occur. If the Debtor argues, as the Debtor does, that its promissory note to FVR does not contain a definite due date and that payment is contingent upon an event that apparently will not occur, then the Debtor's promissory note is illusory and, therefore, void or voidable. If the Debtor's promissory note is illusory, then we must ignore the promissory note and return to the terms of the Listing Agreement. Under the Listing Agreement, FVR's commission has been earned, due, and payable since October 24, 2014.

13. Debtor states: "The [Debtor's] Promissory Note further provides a remedy if the property is reacquired by the Debtor, but is silent as to what happens in the event of non-payment and no reacquisition by the Debtor." (The Debtor's Objection, para. 4.) However, New Mexico

law implies both a duty of good faith and fair dealing and that "when a contract is silent on time of performance, the law implies a reasonable amount of time is the proper standard." *Smith v. Smith*, 95 N.M. 4, 617 P.2d 1325 (Ct. App. 1980); Rule 13-831 N.M.R.A. The failure of the Debtor to specify in its promissory note what happens if there is no payment by Park Ridge and no reacquisition of the real estate by the Debtor does not imply that the promissory note will never come due. Nor does it nullify the promissory note. Instead, it implies that the promissory note is payable within a reasonable time.

14. There is also the matter of unjust enrichment. The Debtor cannot in good conscience claim a windfall based on the wording of the promissory note the Debtor signed to assure FVR that FVR would be paid and to avoid paying FVR's earned $191,143.23 commission when it should have been paid, at the closing of the sale of the Debtor's real estate. Considering that the Debtor's bankruptcy estate will be receiving $2.2 million in less than one month in exchange for the Park Ridge Note, it is inequitable and unjust to deny FVR's claim for commissions that were fully earned nearly four years ago. Denying payment to FVR would allow the Debtor (and the estate) unjustly to retain the benefit of FVR's services in brokering a real estate sale after the Debtor received the benefit of FVR's services, for no reason other than the ambiguous wording of the Debtor's own promise to pay, as reflected in the promissory note.

15. In order to state a claim for unjust enrichment, the aggrieved party must allege that: (1) another has been knowingly benefited at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust. *Heimann v. Kinder-Morgan CO2 Co., L.P.*, 2006-NMCA-127, 140 N.M. 552, 144 P.3d 111. Here, allowing the Debtor's objection would mean that FVR would not be paid its earned commission and the surplus returned to the Debtor would be augmented by a sum of money equal to the commission withheld from FVR, thus enriching the

Debtor at FVR's expense, and allowing the Debtor (and the estate) to escape a binding obligation resulting from a valid, arms-length Listing Agreement after FVR fully performed on the Listing Agreement. Such a result would plainly be unjust.

16. Alternatively, FVR is entitled to recover the reasonable value of the brokerage services provided by FVR to the Debtor at the Debtor's request. The reasonable value of those services is equal to the commission agreed by the Debtor in the Listing Agreement.

17. Additionally and alternatively, as noted above, the effect of the Debtor's argument is to render the Debtor's promissory note an illusory promise. The controlling contract then becomes the Listing Agreement. Under the Listing Agreement, FVR is entitled to recover a late charge of ten (10%) of the amount owed because the commission was not paid at closing. (*Listing Agreement,* para. 29.) Because the Debtor did not pay the commission at closing, FVR is also entitled to recover interest of one and one-half percent (1½%) per month from the date the commission was earned (i.e., at closing) and attorneys' fees and costs incurred by FVR in recovering the amounts owed. (*Listing Agreement,* para. 29, 30.) FVR respectfully asks the Court to award FVR all late charges, interest, attorneys' fees, and costs due to FVR.

**FOR THESE REASONS**, First Valley Realty, Inc. respectfully prays that Debtor's Objection be denied in all respects and that First Valley Realty, Inc.'s claim be allowed in the amount of $191,143.23, *plus* all late charges, interest, attorneys' fees, and costs due to First Valley Realty, Inc. First Valley Realty, Inc. also respectfully prays for such other and further relief to which it may show itself justly entitled.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,

**SCOTTHULSE^PC**
1100 Chase Tower
201 E. Main Dr.
El Paso, Texas 79901
(915) 533-2493
(915) 546-8333 Telecopier


By: /s/ Robert R. Feuille
   **ROBERT R. FEUILLE**
   State Bar No. 06949100
   bfeu@scotthulse.com
   **JAMES M. FEUILLE**
   State Bar No. 24082989
   jfeu@scotthulse.com
   Attorneys for First Valley Realty, Inc., Cruces Equity Partners, LLC, Park Ridge Properties, LLLP


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the Debtor, Las Cruces Country Club, 4328 Yavapai Court, Las Cruces, NM 88011, the Debtor's counsel, R. "Trey" Arvizu, III, trey@arvizulaw.com, Counsel for Sonoma Ranch Entities, Joseph Cervantes, *joe@cervanteslawnm.com*, Counsel for Trustee, Daniel White, *dwhite@askewmazelfirm.com,* and the United States Trustee, PO Box 608, Albuquerque, NM 87103-0608, by first-class mail or e-mail, on  12th  day of September, 2018.


   /s/ Robert R. Feuille
   **ROBERT R. FEUILLE**

1134654.5     Page **8** of **8**
Case 16-12947-j7   Doc 148   Filed 09/12/18   Entered 09/12/18 15:05:12 Page 8 of 8