UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In Re:

LAS CRUCES COUNTRY CLUB, INC.  Case No. 16-12947
   A New Mexico Non-profit Corporation,
   Debtor.

### MEMORANDUM BRIEF IN SUPPORT OF DEBTOR'S MOTION FOR SUMMARY JUDGMENT

Debtor, Las Cruces Country Club, Inc., for its Memorandum Brief in Support of Motion for Summary Judgment, provides the following:

### RELIEF SOUGHT

This Motion for Summary Judgment is brought by Debtor, Las Cruces Country Club, Inc. (hereinafter referred to as "LCCC"). LCCC contends that there is no genuine dispute as to any of the material factual issues regarding the disallowance of claim #7 filed by Sonoma Ranch Golf Course, LLC and Sonoma Ranch Subdivision Ltd. Co. (hereinafter collectively referred to as "Sonoma"). Sonoma filed its claim on April 10, 2017 (hereinafter referred to as the "Sonoma Claim"). LCCC filed an objection to the Sonoma claim on August 7, 2018 as docket #134 (hereinafter referred to as "Sonoma Objection"). Sonoma filed its response to the Sonoma Objection on August 28, 2018 as docket #144 (hereinafter referred to as "Sonoma Response"). LCCC contends that New Mexico law prohibits Sonoma from seeking any damages against LCCC when it has already elected to terminate the real estate contract between the parties. For that reason, Sonoma's claim should be denied.

1 | Page

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P., made applicable to bankruptcy proceedings by Rule 7056, Fed.R.Bankr.P. In this case, since no adversary proceeding has been filed, Fed.R.Civ.P. 56 is also made applicable through Fed.R.Bankr.P. 9014(c). The party requesting summary judgment must demonstrate to the Court that the undisputed facts entitle the movant to judgment as a matter of law. *See Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). ("[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact."). The party opposing summary judgment may not rest upon allegations or denials contained in its own pleading, but must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). To successfully defend against a motion for summary judgment, the affidavits and/or other documentation offered by the party opposing summary judgment must contain probative evidence that would allow a trier of fact to find in Defendant's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to material fact in support of a verdict for that party. *Anderson* at 247-48. "[T]he mere existence of a scintilla of evidence in support of a [non-movant's] position will be insufficient. *Id.* There must be evidence on which a jury could reasonably find for the [non-moving party]." *Id.* The non-moving party may not defeat a summary judgment motion by relying on self-serving or conclusory statements. There must be something

more than some metaphysical doubt as to a material fact. That is, there needs to be evidence of a material fact at issue, although, of course, once that evidence is shown the Court moves on to the trial stage. That is, the evidence need not be probative at the summary judgment stage. *See generally Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether summary judgment should be granted, the Court must view the facts in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc.*, (*In re Harris*), 209 B.R. 990, 995 (10th Cir.BAP2007) ("When applying this standard, we are instructed to 'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'"); *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990) (internal quotation marks omitted); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir.1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party ...").

In the case before the Court, LCCC submits that it has met this standard and that Summary Judgment as requested herein should be entered in its favor.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

A.  Sonoma is the original owner(s) and developers of the Sonoma Ranch Golf Course, and associated clubhouse building, pro shop and other golf course improvements. Sonoma Response, Page 1, Paragraph 3.[1]

---

[1] Fed.R.Civ.P. 56(c)(1) requires that a party cite to a particular part of the record to support its factual position. Typically, this is done by citing to the undisputed allegations in the Complaint and Answer. For purposes of this Motion, LCCC is citing to the allegations made in the Sonoma Objection and Sonoma

3 | P a g e

B. On or about November 14, 2014, Sonoma and Debtor, LCCC, entered into a written contract for Sonoma to sell, and for LCCC to purchase, the Sonoma Ranch Golf Course, clubhouse, pro shop, parking acreage and other associated improvements with the golf course. Sonoma Response, Pages 1-2, Paragraph 4.

C. The Real Estate Contract (hereinafter referred to as "REC") is attached as Exhibit A to both the Sonoma Objection and Sonoma Response and hereto as Exhibit A. Sonoma Objection and Sonoma Response, Exhibit A.

D. The REC is the basis for the Sonoma Claim. Sonoma Response, Page 2, Paragraph 4.

E. Pursuant to the REC, LCCC agreed to pay Sonoma $4,850,000 for the Sonoma Ranch Golf Course, clubhouse and pro shop facilities, and parking acreage. Sonoma Response, Page 2, Paragraph 6.

F. Pursuant to the REC, LCCC agreed to pay Sonoma $1,850,000 of the agreed purchase price when the REC was signed. LCCC also agreed to pay the $3,000,000 balance, and the value of the 2014 Inventory, over 36 months, plus additional interest at the annual rate of 6%. Sonoma Response, Page 2, Paragraph 8.

G. Pursuant to the REC, LCCC agreed to make a first payment of $833,114.63 to Sonoma on or before November 15, 2015. LCCC agreed to make a second payment of $1,232,687.50 on or before November 15, 2016. LCCC agreed to make a third and final payment of the remaining contract balance on or before November 15, 2017. Sonoma Response, Page 2, Paragraph 9.

---

Response and all documents attached thereto. LCCC also cites to the Affidavit of Larry Alford filed concurrently herewith.

H. LCCC failed to make the first scheduled payment of $833,114.63, as it came due to Sonoma on or before November 15, 2015. Sonoma Response, Page 3, Paragraph 10.

I. LCCC failed to make any of the scheduled payments due to Sonoma. Pursuant to the REC the entire balance due Sonoma Ranch was to have been paid by Debtor in November of 2017. Sonoma Response, Page 3, Paragraph 11.

J. After LCCC failed to make the first scheduled payment due by November 15, 2015, Sonoma delivered written notice of default to LCCC dated November 17, 2015 pursuant to the REC. Sonoma Response, Page 3, Paragraph 13.

K. By the written default notice dated November 17, 2015, LCCC was notified it had 30 days to cure the default. This deadline for LCCC to cure its default was December 18, 2015. Sonoma Response, Page 3, Paragraph 13.

L. The REC contains an election of remedies provision in Paragraph 14 which allows Sonoma, upon the default of Debtor, to:

> (1) Either declare the whole amount remaining unpaid to be then due, and proceed to enforce the payment of the same; or
> (2) Terminate this Agreement and retain all sums paid hereunder as rental to that date for the use of the premises, and all rights of the Buyer in the Property shall thereupon cease and terminate, and they shall thereafter be deemed tenants holding over after the expiration of their term without permission. Exhibit A, Page 6, Paragraph 14

M. The REC also contained the following provision in Paragraph 16:

> **Entire Agreement.** This instrument comprises the entire understanding and agreement of the Buyer and Sellers on the subject matter herein contained and shall be binding upon and inure to the benefit of the Buyer, Sellers, and their respective heirs, executors, administrators, successors, and assigns and to the benefit of Sellers, their successors, and assigns.

Case 16-12947-j7   Doc 155   Filed 09/19/18   Entered 09/19/18 12:27:01 Page 5 of 9

N. On December 18, 2015, after providing Debtor with all appropriate notices, Sonoma chose to execute an affidavit of default and election of termination. Sonoma then provided the Affidavit to the escrow company, Mountain States Escrow. Exhibit 1 to the Affidavit Larry Alford is titled, "Affidavit of Uncured Default and **Election of Termination** (emphasis added). Exhibit 1 further provides in Paragraph 8 that "Pursuant to Paragraph **14(2)**, Sellers hereby elect to terminate the Real Estate Contract, and to forfeit Buyer's interest in the Contract and Property." See Exhibit 1 to Affidavit of Larry Alford, Docket #153.

O. As further evidence that Sonoma elected to terminate the contract, on December 18, 2015, Sonoma filed of record in the Dona Ana County Clerk's office the Special Master Deeds effectively terminating the contract and repossessing the property. Sonoma Objection, Page 2, Paragraph 5. See Exhibit 2 to Affidavit of Larry Alford, Docket #153.

P. The REC was never subsequently modified, amended or changed. In a meeting with Sonoma on December 14, 2018, the only agreement reached was for LCCC to turn over control to the golf course to Sonoma because LCCC did not have any further funds to operate the golf course. Affidavit of Larry Alford, Docket #153, Paragraphs 4 and 7.

### III. LEGAL ARGUMENT

**A. Sonoma elected to Terminate Contract.**

The New Mexico black letter law is clear that in this case Sonoma cannot both terminate the REC and sue for damages. The REC contract provided for two remedies to

redress a breach of contract by LCCC. Exhibit A, Page 6, Paragraph 14. The REC, upon the default by LCCC, allowed Sonoma to:

> (1) Either declare the whole amount remaining unpaid to be then due, and proceed to enforce the payment of the same; **or**
>
> (2) Terminate this Agreement and retain all sums paid hereunder as rental to that date for the use of the premises, and all rights of the Buyer in the Property shall thereupon cease and terminate, and they shall thereafter be deemed tenants holding over after the expiration of their term without permission.

The remedies are mutually exclusive. In New Mexico, case law provides that a seller cannot repossess property and then sue for the unpaid balance or any other damages. *Buckingham v. Ryan*, 124 N.M. 498, 503, 953 P.2d 33, 124 N.M. 498, (N.M. App., 1997)(Seller not allowed damages in addition to repossession of the property); *Armstrong v. Csurilla*, 112 N.M. 579, 586, 817 P.2d 1221, 1228 (1991) (agreeing that upon default in a contract for the sale of land, the seller may not accelerate the balance due on the contract and sue for payment as well as repossessing the property and retaining amounts previously paid as liquidated damages); *Davies v. Boyd*, 73 N.M. 85, 88-89, 385 P.2d 950, 952 (1963) (stating that upon default, sellers may not recover for an unpaid part of the purchase price where they have previously declared forfeiture and elected to rescind the contract).

At common law, repossession of the property by the seller constituted an election to rescind the contract, thereby precluding any further recovery from the buyer. *Graham v. Stoneham*, 73 N.M. 382, 384 388 P.2d 389, 391 (1963). Vol. 3, Williston on Sales, Sec. 579b, p. 227, states the rule as follows:

> If the seller exercises his right to reclaim the goods, it is generally held, apart from statute, to be an election to rescind the contract, and thereafter an [73 N.M. 386] action for the price, or any unsatisfied balance of it, is not allowed.

In this case, on December 18, 2018, Sonoma elected to rescind the contract as evidenced by the Special Warranty Deeds it filed with the County Clerk's office. Statement of Fact O.

Not only does common law support that the REC was terminated, but Sonoma's own statements in the Affidavit of Default and Election of Termination (hereinafter referred to as "Termination") indicate it chose to terminate the contract. Mr. George Rawson, on behalf of Sonoma, executed the Termination and provided the document to Mountain States Escrow in order to obtain the Special Warranty Deeds that were being held by the escrow company. Mr. Rawson then recorded the Special Warranty Deeds announcing to the world that Sonoma had terminated the REC and that Sonoma now owned the golf course. Statement of Fact N. The Termination specifically provides in Paragraph 8, "Pursuant to Paragraph 14(2), Sellers hereby elect to terminate the Real Estate Contract, and to forfeit Buyer's interest in the Contract and Property."

Because there are no disputed facts that Sonoma elected to terminate the REC and repossess the property at issue, the Court should disallow Sonoma's proof of claim.

### B.     Entire Agreement

Sonoma's Claim states it is based on breach of real estate contract and settlement agreement. However, there has not been a further written "settlement agreement" produced by any party. The REC states,

> **Entire Agreement.** This instrument comprises the entire understanding and agreement of the Buyer and Sellers on the subject matter herein contained and shall be binding upon and inure to the benefit of the Buyer, Sellers, and their respective heirs, executors, administrators, successors, and assigns and to the benefit of Sellers, their successors, and assigns.

Exhibit B, Paragraph 16, Statement of Fact M. Without any further written modification or written "settlement agreement," Sonoma's further arguments should be denied. The REC was never modified, changed or otherwise amended in any way. The REC was not ambiguous in the choice of remedies it provided. In fact, it provided very conventional remedies allowed and recognized by New Mexico state law. Without a further written executed document between the parties, the REC is as it sates, the "Entire Agreement."

## IV. CONCLUSION

For the reasons set forth above, LCCC respectfully requests that Summary Judgment be granted as requested and that the Proof of Claim of Sonoma be disallowed.

Respectfully Submitted,

*Electronically filed 9/19/17*
R. "Trey" Arvizu, III
Attorney for LCCC
P.O. Box 1479
Las Cruces, NM 88004
(505)527-8600
(505)527-1199 fax
trey@arvizulaw.com

I CERTIFY that the foregoing was electronically filed with the Court via the CM/ECF system. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on this 19th day of September, 2018.

Electronically submitted
R. "Trey" Arvizu, III